WEBSTER GREENTHUMB
CO., Plaintiff,

v.

FULTON COUNTY, GEORGIA,
Defendant.

No. Civ.A. 1:96CV2399–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 18, 2000.

Richmond Mason Barge, Parks Chesin Walbert & Miller, Atlanta, GA, Patrick W. McKee, Office of Patrick W. McKee, Atlanta, GA, for Daniel Webster, plaintiff.

Dorothy Yates Kirkley, Elizabeth Penn Payne, Kirkley & Payne, Atlanta, GA, for Fulton County, Georgia, defendant.

J. Scott Carr, Keith Mark Wiener, Dorothy Yates Kirkley, Elizabeth Penn Payne, for Michael Cooper, individually and in his official capacity as Director of Contract Compliance, defendant.

### ORDER

THRASH, District Judge.

This is a race and sex discrimination action brought pursuant to 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment. It is before the Court on Plaintiff's Motion for Attorneys' Fees or, in the Alternative, Plaintiff's Motion for Interim Award of Attorneys' Fees [Docs. 182 & 191], Plaintiff's Bills of Costs [Docs. 185 & 309], and Plaintiff's Supplemental Motion for Attorneys' Fees [Doc. 312]. Plaintiff seeks $1,544,222.10 in fees plus costs. For the reasons set forth below, Plaintiff's motions for attorneys' fees are granted, as modified by the Court, in the amount of $1,089,-610.45, and the Bills of Costs already taxed by the Court to Defendant is affirmed, as modified, in the amount of $15,997.64.

### I. BACKGROUND

Plaintiff Webster Green Thumb Company ("Webster Green Thumb") is a Georgia corporation with its principal place of business in Newnan, Georgia. It is engaged in the business of landscaping and tree removal. Defendant Fulton County ("Fulton County") is a political subdivision of the State of Georgia. Webster Green Thumb and Fulton County are the only parties that remain at this stage of the litigation. All other parties have been dismissed. Accordingly, Webster Green Thumb seeks recovery of its attorneys' fees from Fulton County alone.

In this action, the Plaintiff successfully challenged Fulton County's 1994 Minority and Female Business Enterprise ("MFBE") program. The facts of this case are stated in detail at 44 F.Supp.2d 1359, 1363–71 (N.D.Ga.1999), and 51 F.Supp.2d 1354, 1356–61 (N.D.Ga.1999), and are not recited here except to the extent they specifically affect issues relating to the Court's award of attorneys' fees. Plaintiff filed suit in this Court on September 17, 1996. The Complaint was amended twice, first on January 10, 1997, and again on February 4, 1998. The purpose of the First Amended Complaint was to add Willie F. Hill, Kelly Goff, Marjorie Simpson and Minority Distributing Corp. as Plaintiffs. All these additional Plaintiffs, however, were ultimately dismissed by the Court either in its December 9, 1998, Order or its February 12, 1999, Summary Judgment Order. At the time of the Court's February 12, 1999, Summary

Judgment Order, the named Plaintiffs were Daniel Webster, Peggy Webster, Kelly Goff and Webster Green Thumb. The Defendants at that time consisted of (1) Fulton County, (2) the six individual members of the Fulton County Board of Commissioners at the time (Mitch Skandalakis, Nancy Boxill, Emma Darnell, Michael Hightower, Gordon Joyner and Tom Lowe), and (3) Michael Cooper, Director of Fulton County's Department of Contract Compliance and Equal Employment Opportunity during the time relevant to this case.

The Second Amended Complaint asserted six claims for relief. Plaintiffs asserted in Count I that Defendants unlawfully discriminated against Plaintiffs on the grounds of race and sex in violation of 42 U.S.C. § 1981 and the Fourteenth Amendment's Equal Protection Clause, as enforced by 42 U.S.C. § 1983. In Counts II and III, Plaintiffs asserted that Defendant Fulton County discriminated against the putative class of Plaintiffs by engaging in a policy, pattern, or practice of discriminating on the basis of race and sex in awarding contracts for goods and services. In Count IV, Plaintiffs asserted that Defendants violated the Equal Protection Clause of the Constitution of the State of Georgia, Art. 1, § 1, ¶ 2. In Count V, Plaintiffs asserted that the Defendants impermissibly violated O.C.G.A. § 48–5–220 by providing tax money to persons for no reason other than their race. Finally, in Count VI, Plaintiffs asserted a retaliation claim pursuant to Section 1981 and the Equal Protection Clause. In asserting these claims, Plaintiffs sought declaratory, injunctive, and monetary relief.

Following discovery, Plaintiffs and Defendants filed motions for summary judgment. The Court entered an Order on February 12, 1999, denying Plaintiffs' Motion for Summary Judgment and granting in part and denying in part Defendants' Motion for Summary Judgment. Defendants' summary judgment motion was granted as to all claims asserted on behalf of Plaintiff Kelly Goff because he lacked standing to sue. The Court also dismissed the state law-based claims in Counts V and VI of the Second Amended Complaint entirely. The Court found that Defendants Skandalakis, Boxill, Darnell, Hightower, Joyner and Lowe were entitled to absolute and qualified immunity as to the claims asserted against them in their individual capacities. Furthermore, the Court concluded that there was no reason to continue the case against them in their official capacities since Fulton County was already a party over which the Court had jurisdiction. Consequently, Defendants' Motion for Summary Judgment was granted on all claims as to Defendants Skandalakis, Boxill, Darnell, Hightower, Joyner and Lowe. Defendants' Motion for Summary Judgment was denied in all other respects as to Defendants Fulton County and Cooper.

The Court stated in its February 12, 1999, Summary Judgment Order that it would first conduct a bench trial regarding the 1994 MFBE program's constitutionality. A separate jury trial on Plaintiffs' claim for monetary damages would follow. The bench trial was conducted over six days beginning May 11, 1999. The Court then recessed for two days prior to closing arguments to review the voluminous documentary evidence introduced at trial. Closing arguments were held on May 24, 1999. The Court spent three weeks working on its findings of facts and conclusions of law. The Court, in an Order entered June 11, 1999, struck down the Fulton County MFBE program as an unconstitutional violation of the Equal Protection Clause. The Court explained its decision, as noted in its Conclusion to the June 11, 1999, Order by stating:

> In summary, Fulton County has operated a minority and female preference program for most of the past two decades. The program has been good for economic development in the minority business community. Historically, minorities have been the victims of pervasive discrimination in all facets of eco-

nomic enterprise. As a matter of good public policy, this alone might justify minority set aside programs by public agencies. Nonetheless, the Supreme Court has held that such programs involving racial or ethnic preferences must be subjected to strict scrutiny. Applying the high standards set by the Supreme Court and the Eleventh Circuit, the Fulton County 1994 MFBE Program cannot survive strict scrutiny with respect to the evidentiary foundation for such a program or narrow tailoring to meet a compelling governmental interest. There is no evidence that the Fulton County Government has significantly or systematically discriminated against African–American or other minority businesses in the decades of the 1980s and 1990s. There is insufficient evidence that it has become a passive participant in a pervasive system of discrimination in the private sector and that racial and ethnic preferences have been adopted as a last resort to eliminate that discrimination. The program itself does nothing to remedy discrimination in private sector contracting. The goals set by the program are not based upon any realistic assessment of the availability of minority business enterprises in the Atlanta metropolitan marketplace. Likewise, Fulton County has not produced sufficient probative evidence of discrimination against female business enterprises to justify a gender preference program. Therefore, race, ethnic and gender balancing in Fulton County contracting must end.

*Webster v. Fulton County,* 51 F.Supp.2d 1354, 1383 (N.D.Ga.1999), aff'd, 218 F.3d 1267 (11th Cir.2000). Final judgment on the claim for declaratory and equitable relief was entered in favor of Plaintiff Webster Green Thumb. Plaintiffs on June 24, 1999, filed their first motion requesting attorneys' fees for work done on the case up to that point and provided the Court a supporting itemization of their fees on July 23, 1999. After careful consideration, the Court chose to defer all attorneys' fees issues until conclusion of the entire case.

A jury trial on damages was held beginning February 14, 2000. At the conclusion of the trial, the jury returned a verdict in favor of Plaintiff against Fulton County for $8,750 in compensatory damages as lost profits. The jury also awarded Plaintiff $1.00 in nominal damages against Michael Cooper. The jury, however, rejected Plaintiff's claim for $1 million in punitive damages against Cooper. After the jury was dismissed, the Court sustained Cooper's defense of qualified immunity based upon the jury's factual findings and dismissed the action against him. Judgment was entered in favor of the Plaintiff against Fulton County. Plaintiff as the prevailing party in this case now seeks an award of attorneys' fees from Fulton County. Both parties have fully briefed the Court on the fee petition. In addition, the Court conducted a day-long evidentiary hearing on July 3, 2000, to assist it in rendering a reasonable award. Additional submissions were made after the hearing.

## II. DISCUSSION

The award of attorneys' fees in this action is governed by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, as amended. That act provides as follows:

In any action or proceeding to enforce a provision of section 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). This statute is interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights. *Williams v. City of Fairburn,*

702 F.2d 973, 976 (11th Cir.1983). Although awarding attorneys' fees is within the discretion of the trial court, such discretion is a narrow one in that attorneys' fees should be denied only when special circumstances would render an award unjust, *Solomon v. City of Gainesville,* 796 F.2d 1464, 1466 (11th Cir.1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys. *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983). Importantly, one need not succeed on all claims in order to obtain attorneys' fees. *Id.* With these general principles in mind, the Court now turns to the particulars of Plaintiff's request for attorneys' fees and Fulton County's contentions why the requested fees should not be fully awarded in this case.

## A. *PREVAILING PARTY STATUS*

■ Fulton County contends that Plaintiff should not be entitled to recover any attorneys' fees for work relating to the bench trial, at which Plaintiff sought declaratory and injunctive relief. Fulton County contends that Plaintiff was not a "prevailing party" at the bench trial. Section 1988 by its terms limits eligibility for attorneys' fees to a "prevailing party." 42 U.S.C. § 1988(b). A party is not a prevailing party if it only "conceivably could benefit" from the court's judgment. *Barnes v. Broward County Sheriff's Office,* 190 F.3d 1274, 1278 (11th Cir.1999). There must exist evidence that the court's judgment "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoted in *Barnes,* 190 F.3d at 1278). Thus, a party that succeeds on the merits nonetheless is not a prevailing party for the purpose of attorneys' fees if it does not directly benefit from the court's order at the time it is rendered. *See Hewitt v. Helms,* 482 U.S. 755, 763–64, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (noting that plaintiff was not prevailing party be-

cause he did not directly benefit from final judgment at the time it was entered).

The analysis begins with the United States Supreme Court's decisions in *Hewitt v. Helms,* 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), two cases where the Supreme Court held that the litigants were not prevailing parties for the purpose of attorneys' fees. In *Hewitt,* a prisoner successfully argued that his administrative segregation and subsequent conviction for participating in a prison riot violated his due process rights. The Supreme Court noted that during the pendency of the lawsuit the plaintiff had been released from prison. The Court held that he, therefore, was not a prevailing party for the purpose of attorneys' fees because the vindication of his constitutional rights was merely a "moral satisfaction." *Hewitt,* 482 U.S. at 762, 107 S.Ct. 2672. Even though the plaintiff was subsequently returned to prison, and thus ultimately may have benefitted from his victory in the Section 1983 case, the Court said "that fortuity can hardly render him, retroactively, a 'prevailing party' ...." *Id.* at 763–64, 107 S.Ct. 2672. In *Rhodes,* two prisoners successfully challenged a prison's magazine subscription policy as a violation of their procedural and substantive due process rights. The plaintiffs, nevertheless, were not entitled to attorneys' fees because the policy modification caused by the suit could not have benefitted either of the two plaintiffs, one of whom had been released before the district court entered its order and the other of whom had died. *Rhodes,* 488 U.S. at 4, 109 S.Ct. 202.

In this case, Fulton County contends that Plaintiff has not directly benefitted from the injunction the Court issued and, therefore, should not recover attorneys' fees for work relating to its prayer for declaratory and injunctive relief. To support this argument, Fulton County relies on the Eleventh Circuit Court of Appeals' recent decision in *Barnes v. Broward*

*County Sheriff's Office,* 190 F.3d 1274, 1278 (11th Cir.1999). In that case, the Eleventh Circuit held that a job applicant was not a prevailing party for the purpose of attorneys' fees even though he obtained an injunction that permanently enjoined Broward County, Florida, from continuing certain preemployment psychological testing. The district court held that such testing violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq. Broward County,* 190 F.3d at 1278. The Eleventh Circuit stated that while it was conceivable that the plaintiff could benefit from the injunction if he ever reapplied to Broward County for a job, the plaintiff had presented no evidence that he planned to reapply and, thus, did not directly benefit from the injunction. *Id.* The Eleventh Circuit, however, specifically noted in a footnote that it was not foreclosing the possibility that a successful litigant could recover attorneys' fees if he "establishes that he continues to have *or is reasonably likely to have* some legal relationship to the defendant." *Id.* at 1278 n. 3 (emphasis added). It simply found no evidence that Barnes was eligible to reapply for the deputy position or that he intended to reapply once the court barred continued use of the psychological examinations. *Id.*

Although it followed the *Hewitt* and *Rhodes* holdings in *Broward County,* the Eleventh Circuit expressly recognized that cases in the employment context may be distinguishable from these prisoner cases if the plaintiff can show that he remains eligible for the position he sought and is likely to reapply after successfully challenging the employment practice. *See Barnes v. Broward County Sheriff's Office,* 190 F.3d 1274, 1278 n. 3 (11th Cir.1999) ("In an employment case, however, it may be possible to allege and show—without requiring any speculation by the court—that the plaintiff retains a sufficient connection to the defendant that he likely will be affected by the court's judgment."). The case presently before this Court is distinguishable from *Hewitt, Rhode* and *Broward County* on just such grounds, as

well as a number of others. This case is much closer to the employment context referenced in the *Broward County* footnote than the prisoner context that *Hewitt* and *Rhodes* represent or the actual situation in *Broward County.* Plaintiff was seeking work from Fulton County on a contractual basis. Unlike the plaintiff in *Broward County,* Plaintiff in this case presented evidence throughout the litigation that it remains in the tree removal business, would like to obtain contracts with Fulton County, and is reasonably likely to reapply for County contracts in the future. Plaintiff will directly benefit from this Court's decision in all future bids it submits to Fulton County. Its ability to avail itself to the benefits of the injunction is not dependent on mere "fortuity," as the Supreme Court has said exists when an ex-convict commits another crime, is arrested and convicted, and just happens to be reincarcerated in the very same prison or system as before.

In addition, Plaintiff's success in obtaining declaratory and injunctive relief cannot be termed mere "moral satisfaction." Fulton County alleges that the MFBE program would have been up for renewal only three months after this Court issued the injunction, notes that Plaintiff did not have any pending bids with the County, and implies that the MFBE program was going to be allowed to lapse without renewal. Based on these allegations, Fulton County contends that the allegedly soon-to-be-non-existent MFBE program could no longer have harmed Plaintiff and this Court's injunction, therefore, could not have benefitted Plaintiff. The Court cannot accept this characterization of the evidence. Despite Fulton County's contentions to the contrary, evidence exists that Fulton County would not have allowed its MFBE program to lapse three months after this Court issued the injunction and instead would have renewed a program that has directly harmed Plaintiff's chances of obtaining County business. Indeed, if Fulton County really had planned to disman-

tle the MFBE program on its own accord within the three months immediately following issuance of the injunction, there would have been little reason for the County to request, as it did, a stay of the injunction until after the Eleventh Circuit decided the case on appeal. Certainly, if the County did not intend to renew the MFBE program, it would not have wasted the taxpayers' money appealing the Order abolishing it.

Finally, even if this Court somehow held that Plaintiff has not directly benefitted from the declaratory and injunctive relief—either because Plaintiff is not likely to submit bids to the County in the future or because Fulton County would have allowed the MFBE program to expire— Plaintiff still would not lose his status as prevailing party for the work done relating to the prayer for declaratory and injunctive relief. That is because Plaintiff was also seeking monetary damages and was awarded them at the jury trial. The issues that surround the prayers for declaratory and injunctive relief are intertwined with Plaintiff's claims for monetary damages. Plaintiff's success on the damages claims depended greatly on the Court's judgment of the constitutional issues involved in this case. Declaratory and injunctive relief were necessary steps for Plaintiff to achieve monetary relief for damages it incurred. To obtain monetary damages, Plaintiff needed to show that Fulton County's MFBE program was unconstitutional.

The interrelationship of all the issues in this case would be obvious if the case had been tried in one proceeding. Unlike in *Broward County* where the plaintiff obtained only injunctive relief and failed on all damage claims, Plaintiff in this case won at both the bench and jury trials. This Court, therefore, must take into account the interrelationship of Plaintiff's different prayers for relief. In contrast, there was no reason for the Eleventh Circuit to do so in *Broward County* because the district court dismissed the plaintiff's claims for monetary damages. As the Su-

preme Court held in *Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), any time a plaintiff wins even nominal damages for a civil rights violation, he becomes a prevailing party pursuant to § 1988 since "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* Plaintiff has thus met the statutory threshold for obtaining attorneys' fees. *See Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ("At the outset we noted [in *Hensley v. Eckerhart,* 461 U.S. 424, 431, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ] that no fee award is permissible until the plaintiff has crossed the 'statutory threshold of prevailing party status.'") With that threshold met, this Court now turns to he task of calculating a reasonable award of attorneys' fees.

## B. REASONABLE AWARD OF ATTORNEYS' FEES

Plaintiff seeks a total attorneys' fee award of $1,544,222.10. This total requested amount represents $1,051,235.00 for 5,292.6 hours of work conducted up through the bench trial on declaratory and injunctive relief, an additional $209,627.50 for 869.0 hours of work related to the jury trial on damages, $27,307.50 for 99.3 hours of work related to the attorneys' fee petition since the March 10, 2000, supplemental filing following the jury trial, a 15% enhancement for exceptional results obtained, and $62,826.60 in expenses. Fulton County responds that this Court should drastically reduce Plaintiff's request for attorneys' fees on grounds that many of the claims asserted were ultimately unsuccessful, that Plaintiff is not entitled to an enhancement, and that Plaintiff's lodestar amount should be reduced on grounds that Plaintiff obtained minimal results.

In *Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Blum v. Stenson,* 465 U.S. 886, 896–97, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the United States Supreme Court established the framework and methodology for calculating the amount of a reasonable attorneys' fee award to a prevailing party pursuant to 42 U.S.C. § 1988. The starting point for calculating reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Blum,* 465 U.S. at 897, 104 S.Ct. 1541; *accord ACLU of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999). The product of these two numbers is commonly termed the base figure, or the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). After calculating the lodestar, the court may within its discretion adjust the amount upwards or downwards based on a number of factors, such as the quality of the results obtained and the legal representation provided. *Blum,* 465 U.S. at 897, 104 S.Ct. 1541; *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir.1996).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Barnes,* 168 F.3d at 427 (*quoting Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1304 (11th Cir.1988)); *accord Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.2000). That burden includes:

> supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.... A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*Barnes,* 168 F.3d at 427. (citations omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Similarly, those parties opposing fee applications also have obligations. Their objections and proof concerning hours they want excluded must be specific and "reasonably precise." *Id.* at 428, 103 S.Ct. 1933. When the parties fulfill their respective obligations, this assists the court in fulfilling its duty to render an order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review. *Id.* at 428–29, 103 S.Ct. 1933; *see also Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.2000) ("[W]e have said that a court's order on attorneys' fees must allow meaningful appellate review."); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1335 (11th Cir.1987) ("A prerequisite for our review of an attorney's fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.' ").

#### 1. THE "LODESTAR"

##### a. REASONABLE HOURS

"[A]ll reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988," *Barnes,* 168 F.3d at 427 (11th Cir.1999) (*quoting Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983)), but "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is

overstaffed. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work. *Jones v. Central Soya Co.,* 748 F.2d 586, 594 (11th Cir.1984); *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.1983). As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorneys' fees. *See City of Riverside v. Rivera,* 477 U.S. 561, 573 n. 6, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (allowing compensation for productive attorney discussions and strategy conferences); *Webb v. Board of Ed.,* 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (allowing compensation for pre-litigation services in preparation of suit); *Cruz v. Hauck,* 762 F.2d 1230, 1233–34 (5th Cir.1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis,* 752 F.2d 553, 554 (11th Cir.1985) (holding that measures to enforce judgment are compensable); *New York State Assoc. for Retarded Children v. Carey,* 711 F.2d 1136, 1146 & n. 5 (2d Cir.1983) (allowing compensation for background research and reading in complex cases); *Brewster v. Dukakis,* 544 F.Supp. 1069, 1079 (D.Mass.1982) (compensating for negotiation sessions), *aff'd as modified,* 786 F.2d 16, 21 (1st Cir.1986); *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296, 1321, 1348 (E.D.N.Y.1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation). Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel. *University College,* 706 F.2d at 1208. As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988). In short, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988," and "the standard of reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987) (quoting *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983)).

The Eleventh Circuit has stated that its decisions regarding attorneys' fees "contemplate a task-by-task examination of the hours billed" and that applicants should "show the time spent on the different claims." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427, 429 (11th Cir.1999). The Eleventh Circuit has also stated that where a fee application and supporting documents are voluminous, a district court is not required to engage in an hour-by-hour analysis of the fee award. *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994). In such cases, it is sufficient for the district court to determine the total number of hours devoted to the litigation and then reduce that figure in gross with an across-the-board percentage reduction if such a reduction is warranted. *Id.* The Eleventh Circuit has even intimated that such a method may be the preferred course with a voluminous fee request to avoid waste of judicial resources. *Id.* Thus, the Eleventh Circuit has provided its district courts with two avenues for determining a fee award in cases where the request is voluminous: (1) a district court may attempt to reduce the hours on a task-by-task basis, or (2) the court may simply add up the total number of hours

expended and then reduce that amount on a percentage basis, if reduction is warranted. Both of these two alternative methods comport with Supreme Court precedent. The Supreme Court has stated:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The Court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

*Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *accord Popham v. City of Kennesaw,* 820 F.2d 1570, 1579–81 (11th Cir.1987) ("[T]he Supreme Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims.")

This case certainly meets the requirements for a voluminous fee request. Furthermore, Fulton County's objections are themselves quite voluminous. Indeed, in *Loranger,* the case in which the Eleventh Circuit adopted the percentage-reduction method, the amount of the fee request was less than exists here. The Court has given considerable thought to employing the *Loranger* method of computing fees because of the already enormous expenditure of judicial resources which this case represents. In the end, however, this Court has chosen to engage in an hour-by-hour analysis of the fee award. It has done so for three reasons. First, this case involves numerous different claims—some of which were successful, some of which were unsuccessful, some of which are discrete, and some of which are interrelated. Even if the Court chose to reduce the award on a percentage basis, it still would have to analyze the relationship of the claims to determine the proper percentage by which to reduce the award. Indeed, it might have had to spend as much time as it has doing an hour-by-hour analysis. Second,

any such percentage reduction would necessarily be somewhat more arbitrary than a by-the-hours analysis. Third, Plaintiff's counsel has provided the Court with very detailed summary breakdowns for each part of the case to assist the Court in calculating the total hours expended on each task. Furthermore, Defendants have provided their own summaries stating exactly which specific tasks and hours they are challenging. The Court has relied on both parties summaries extensively in calculating the fee award.

The Court's reference to these summaries, however, has not prevented the Court from conducting its own hour-by-hour analysis of the fee request. The summaries merely have aided the Court in fulfilling its duty. Additionally, the Court notes that both parties were given ample opportunity to question each other on these summaries and all other related documents at an all-day evidentiary hearing on July 3, 2000. Both parties did so and, in so doing, provided greater focus to the fee issues before the Court. Significantly, with a couple of minor exceptions that will be noted, Fulton County does not in any way place in issue the veracity of Plaintiff's counsel with respect to the time recorded on their time records.

■ A computation of the hours reasonably expended should not include time spent on "discrete and unsuccessful" claims, *Duckworth v. Whisenant,* 97 F.3d 1393, 1397 (11th Cir.1996), but should include time spent on all claims that arise out of the same course of conduct and share a "common core of fact," even if a specific individual claim did not succeed. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Davis v. Locke,* 936 F.2d 1208, 1214 (11th Cir.1991); *Jean v. Nelson,* 863 F.2d 759, 771 (11th Cir.1988); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir. 1987); *Military Circle Pet Ctr. No. 94 v. Cobb County,* 734 F.Supp. 502, 504 (N.D.Ga.1990). In determining whether claims are related by a common core of

fact, the Eleventh Circuit has taken an expansive view. *See Popham,* 820 F.2d at 1579 ("Because plaintiff's counsel is required to 'explore every aspect of the case, develop all the evidence and present it to the court,' courts have expansively treated claims as being related.") (citations omitted). A court also should not discount an attorneys' fee award based on the court's rejection of an alternative legal ground, when one of the grounds is accepted. As the Supreme Court has stated:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)

Where entries specify activities that were directed towards both a successful claim and a "discrete and unsuccessful" claim, the allocation of reasonable hours can become quite complicated. In such instances, the Court in this case has followed Judge Forrester's example in *Duckworth v. Whisenant,* No. 1:89–CV–1102–JOF (N.D.Ga. Jan. 31, 1995), *aff'd,* 97 F.3d 1393, 1397 (11th Cir.1996), not to exclude the entire combined entry, but instead to attempt an apportionment of each activity in an evenhanded manner. *See Duckworth,* 97 F.3d at 1397 (affirming Judge Forrester's award of attorneys' fees and wholly incorporating his order as the appellate decision). As the Eleventh Circuit has explained, where all the theories of recovery arise from a common core of facts, a district court should focus on "the significance of the overall results as a function of total reasonable hours," and reducing the lodestar based on a simple ratio of successful issues to issues raised is improper. *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988). With these principles in mind, the Court now turns to the specific hours Plaintiff has requested in its requests for attorneys' fees to determine their reasonableness.

Because the Eleventh Circuit has stated that its decisions regarding attorneys' fees "contemplate a task-by-task examination of the hours billed," *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427, 429 (11th Cir.1999), this Court has divided Plaintiff's attorneys' fee request based on stages of litigation, just as the Eleventh Circuit did in *Barnes.* The Court looks first at the hours expended on the complaint and accompanying mandatory disclosures filed in this case. The Court then reviews, in the following order, time spent on issues related to class certification, Plaintiff's activities related to depositions, Plaintiff's document production and analysis, Plaintiff's written discovery, Plaintiff's other investigation and background research, Plaintiff's involvement with its own and Fulton County's expert reports, motions filed with the court related to discovery, the parties' motions for summary judgment, pre-trial motions for the bench and jury trials, hours expended in preparation for and attendance at the bench and jury trials, time spent on miscellaneous correspondence and conferences, preparation of the fee requests, taxable costs and non-taxable expenses.

### i. COMPLAINT AND MANDATORY DISCLOSURES

Plaintiff in this case filed the original Complaint, a First Amended Complaint, and a Second Amended Complaint. For all three pleadings and the accompanying mandatory disclosures that must be filed with the Court, Plaintiff requests fees for 69.4 hours of work. According to Plaintiff, work on the Complaint, Amended Complaints and Mandatory Disclosures is divided as follows: Attorney Mason Barge—19.7 hours; Attorney Patrick McKee—41.8 hours; associate attorney Deborah Barrow—2.5 hours; associate attorney Holli Hidden—4.1 hours; and asso-

ciate attorney Susan Rickertsen—1.3 hours. Fulton County contends that the Court should reduce the requested fee award for those portions of the complaints and mandatory disclosures that are attributable to unsuccessful Plaintiffs and successful Defendants in this case.

Plaintiffs Marjorie Simpson, Willie F. Hill and Minority Distributing Company were dismissed by the Court on December 9, 1998. Plaintiff Kelly Goff was dismissed by the Court in its February 12, 1999, Summary Judgment Order for lack of standing. Plaintiffs Daniel and Peggy Webster's equitable claims were dismissed following the bench trial for lack of standing. Ultimately, they were dismissed from the case entirely because they lacked standing on their damages claims also. Thus, of the original seven Plaintiffs in this case, only one, Webster Green Thumb, remained a party throughout the entire case and ultimately succeeded.

Defendants Mitch Skandalakis, Nancy Boxill, Emma Darnell, Michael Hightower, Gordon Joyner and Tom Lowe, all of whom were members of the Fulton County Board of Commissioners at the time this case was filed, were dismissed in the Court's February 12, 1999, Summary Judgment Order. As to claims asserted against them in their individual capacities, the Court held that the commissioners were entitled to absolute and qualified immunity. As to claims asserted against them in their official capacities, the Court held that there was no reason to continue the case against the commissioners since Fulton County remained a party to the case. The Court dismissed all claims against Defendant Andrew Jenkins of the County's Department of Public Works in its December 9, 1998, Order. Defendant Michael Cooper, Director of Fulton County's Department of Contract Compliance and Equal Employment Opportunity during the time relevant to this case, remained a party throughout the entire course of the lawsuit until he was dismissed after the jury trial. Thus, only two of the original Defendants in this case remained throughout the case, and Plaintiff Webster Green Thumb is a prevailing party against only one of them, Fulton County.

Fulton County, therefore, contends that the Court should reduce the time that Plaintiff's counsel spent drafting the Complaint and Amended Complaint in this case by 60% to reflect that almost all of the Plaintiffs and Defendants in this action ultimately were dismissed. Although Fulton County is correct that all but one of the Plaintiffs in this case was dismissed and that Plaintiff succeeded in its claims against only one of the Defendants, that fact alone does not mandate that the Court reduce the attorneys' fee award for time spent on activities that relate to the dismissed Plaintiffs or Defendants. This is especially true with regard to the Complaint. As discussed above, a fee petition should not be reduced where claims arise out of the same course of conduct and share "a common core of fact," *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and the Eleventh Circuit has taken an expansive view of the issue. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir.1987). In this case, it is clear that all the claims asserted by all the Plaintiffs against all the Defendants arise out of the same course of conduct and share a common core of fact. Indeed, the claims all share an identical core of fact. Even if only one Plaintiff; Webster Green Thumb, had sued only one Defendant, Fulton County, the original Complaint and the Second Amended Complaint still would have been almost identical to those actually filed. The only difference would have been that some of the parties named in the complaints would not have been included. Plaintiff, therefore, is entitled to recover attorneys' fees for the time spent on the original Complaint and the Second Amended Complaint.

 It is also true, however, that a computation of hours reasonably expended should not include time spent on discrete

1354

and unsuccessful claims. *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996). The First Amended Complaint added discrete and unsuccessful claims. The overriding purpose of the First Amended Complaint was to add Willie F. Hill, Kelly Goff, Marjorie Simpson and Minority Distributing Corp. as Plaintiffs, and Andrew Jenkins as a Defendant. As explained above, all these Plaintiffs were dismissed by the Court, as were all claims against Defendant Jenkins. Accordingly, the Court should reduce the attorneys' fee award for all of the hours spent on this First Amended Complaint. Mr. Barge himself admitted, both in a brief and at the evidentiary hearing, that time spent on the First Amended Complaint may not be compensable and that he did not include his own hours spent on this task in the attorneys' fees petition. *See* Plaintiff's Reply in Support of Plaintiff's Supplemental Motion for Award of Attorneys' Fees and Expenses of Litigation, at 5 [Doc. 338]. Plaintiffs records, however, do include 12.0 hours that Patrick McKee spent on January 3 and 4, 1997, on the Motion to Amend the Complaint and the First Amended Complaint. Accordingly, 12.0 hours should be excluded from compensable time that Patrick McKee spent on the task of "Complaints and Mandatory Disclosures." Otherwise, all hours in this category are compensable. Given the factual complexity of this case, the Court concludes that 57.4 hours spent on the Complaint and Second Amended Complaint in this case is not excessive. *See, e.g., Barnes,* 168 F.3d at 432 (compensating 40 of 147.88 hours requested for a much simpler complaint where only 14% of the paragraphs were not derived from already existing sources).

### ii. *CLASS ACTION ISSUES*

■ Plaintiff requests fees for 324.0 hours related to its unsuccessful attempt to obtain class certification and its Motion to Contact Class Members. According to Plaintiff, work related to this task is divided as follows: Mason Barge—129.2 hours; Patrick McKee—36.1 hours; Deborah Bar-

row—82.7 hours; Holli Hidden—20.8 hours; and Susan Rickertsen—55.2 hours. Fulton County contends that all time spent on class issues is noncompensable because Plaintiff did not succeed on any of its motions in this category and the Court refused to certify this case as a class action. After careful consideration of the matter, the Court agrees with Fulton County. Given Eleventh Circuit case law, the effort to obtain class certification under Rule 23(b)(3) was probably doomed from the start. *See Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1004–07 (11th Cir.1997). As discussed immediately above, time spent on dismissed Plaintiffs should be excluded from a fee award if the result is discrete and unsuccessful. *Duckworth,* 97 F.3d at 1397. The Court views the motions pertaining to class certification and contacting potential class members as akin to the dismissed Plaintiffs issue. The Court's refusal to certify the class is in effect no different that the Court's dismissal of Plaintiffs Simpson, Hill, Goff, Daniel and Peggy Webster, and Minority Distributing Corp. Both the dismissed Plaintiffs and the prospective class were not entitled to participate in the lawsuit. Since time spent on discrete and unsuccessful issues of the dismissed Plaintiffs is not compensable, neither should this Court include in the fee award time spent on unsuccessful attempts to add new plaintiffs. Accordingly, all discrete and separable time that Plaintiff's counsel spent on class issues in this case is excluded from the fee award.

Plaintiff contends that even if time spent on class certification is noncompensable, time spent on the Motion to Contact Class members nevertheless should be compensated. According to Plaintiff, this motion represented an attempt to obtain discovery from individuals who might be potential witnesses, in addition to potential parties, in the case. That may be true, but the Court refuses to compensate this time. If Plaintiff had not attempted to certify this case as a class action, Plaintiff would not

have needed a motion from the Court to seek out witnesses. It makes little sense for the Court to compensate Plaintiff for such a motion here where class action status ultimately was denied.

### iii. DEPOSITIONS & WITNESSES

■ Plaintiff requests fees for 407.2 hours related to depositions and other pre-trial activities involving witnesses. According to Plaintiff, work related to this task is divided as follows: Mason Barge—80.1 hours; Patrick McKee—239.3 hours; Deborah Barrow—57.5 hours; Holli Hidden—28.1 hours; and assistant Dan McKee—2.2 hours. Fulton County challenges this requested amount on a number of grounds. First, Fulton County says that all hours spent deposing the dismissed Defendants should be excluded. Fulton County states that 44.7 hours were spent by Plaintiff deposing dismissed Defendants Andrew Jenkins, Nancy Boxill, Emma Darnell, Robert Fulton, Michael Hightower, Gordon Joyner, Tom Lowe and Mitch Skandalakis. The Court disagrees that the time spent deposing these individuals should be excluded. These individuals were not deposed simply as Defendants. They were also deposed as commissioners and employees of Fulton County who knew details of the County's minority and female contracting practices. Their depositions, therefore, were an integral part of Plaintiff's discovery as it related to Defendant Fulton County. Accordingly, all time spent on these depositions is compensable.

■ Second, Fulton County contends that the Court should exclude 70% of the time Patrick McKee spent preparing for and defending the deposition of Daniel Webster and 60% of the time spent preparing for and defending the deposition of Peggy Webster. Fulton County argues that 17 hours spent on these depositions should be attributed to Plaintiff's prayer for punitive damages, 3.4 hours should be attributed to their participation in the case as ultimately dismissed Plaintiffs, and 1.6 hours should be attributed to the unsuccessful retaliation claim. Thus, in all, 22.0

hours should be excluded from the Websters' depositions. In addition, Fulton County contends that an estimated 5 hours should be excluded for time that Mason Barge spent preparing for and defending the deposition of Kelly Goff. The Court disagrees. First, Plaintiff should not be penalized for defending depositions that Fulton County requested and conducted. Second, as to the Webster's depositions, this Court refuses to split the case into the smallest atoms possible. That would occur if the Court apportioned time spent in the Websters' depositions by the specific questions and answers to a particular claim. *See Commissioner, INS v. Jean,* 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (stating that "fee-shifting statutes favor [ ] treating a case as an inclusive whole, rather than as atomized line-items"). While *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999), set forth a demanding standard for district courts to meet in explaining the reasons underlying their award of attorneys' fees, the Court does not believe that the Eleventh Circuit intended the *Barnes* decision to turn its district judges into bean counters, as would result if the Court followed Fulton County's reasoning to its illogical conclusion. Time spent preparing for and defending the Websters' and Kelly Goff's depositions is compensable in whole.

■ Third, Fulton County contends that the Court should exclude 33.0 of the hours that Plaintiff spent on the depositions of Michael Cooper, Ben Edwards, and Bill Mowrey. Fulton County says this requested exclusion reflects the amount of time that Plaintiff spent in the depositions on the failed punitive damages claim. The Court believes that a reduction is not warranted. The questions asked in the depositions related not only to punitive damages, but also to the issues of declaratory relief, injunctive relief and compensatory damages. It is impossible for this Court to separate out any group of questions in those depositions as applying only to punitive damages and not affecting the other

claims at all. Because the time spent on these depositions related not only to the unsuccessful claim for punitive damages, but also to the successful claims for declaratory relief, injunctive relief and compensatory damages, all the hours are compensable. Given both the factual complexity of this case and its protracted course, the Court concludes that 407.2 hours spent on depositions and witnesses is not excessive.

### iv. DOCUMENT PRODUCTION & ANALYSIS

Plaintiff requests fees for 2,444.0 hours related to document production and analysis. According to Plaintiff, work related to this task is divided as follows: Mason Barge—205.6 hours; Patrick McKee—88.7 hours; Deborah Barrow—769.4 hours; Holli Hidden—1,240.6 hours; Susan Rickertsen—81.3 hours; and Dan McKee—58.4 hours. About 40% of the time that Plaintiff's counsel expended in the entire case was spent on document production and analysis. Not surprisingly, time spent on this task is what Fulton County most strongly challenges in the whole fee request.

First, Fulton County challenges all time included in this category that led to information Plaintiff used in its attempt to certify the case as a class action. Specifically, Fulton County contends that this Court should exclude all time spent on document production and analysis up until May 1, 1998, the date of Plaintiff's last brief on the class certification issue. In all, Fulton County seeks to have the Court exclude 1,918.5 hours for this reason. This amount represents 78% of all time spent on document production and analysis. Fulton County's position, as it stated in its closing argument at the evidentiary hearing, is that the Court should deduct hours spent on any task related to an unsuccessful claim even if time spent on that task also had a permissible purpose. That is not the law in this Circuit or any other. Indeed, the law is the opposite. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart,* 461 U.S. at 441, 103 S.Ct. 1933. The time that Plaintiff spent on document production and analysis in this case did not relate solely to the unsuccessful class certification issue, but also provided information that supported the core of Plaintiff's successful claims. As the Court wrote in its June 11, 1999, Order following the bench trial:

> In this regard,. the Court accepts as credible the testimony of Thomas Bruns that various contracting procedures were employed by Fulton County department heads, buyers and the Office of Contract Compliance to award contracts to minorities in order to achieve the numerical percentages established by the program. *The Court accepts this testimony as credible because it is corroborated by the documentary evidence from the bid files.* The procedures used to achieve the participation goals included disqualifying majority firm bidders for failing to comply with the program (Pl.Exh.3–25), awarding contracts to higher bidders in order to obtain minority participation (Pl.Exh.35, 37), splitting bids so that minority firms received part of a contract when a majority firm was the overall low bidder (Pl.Exh.49–54), solicitation of minority firms after bids were closed (Pl.Exh.56, 57), rebidding contracts in order to obtain minority participation (Pl.Exh.58), treatment of the participation goals as mandatory requirements (Pl.Exh.64–66, 70, 71, 116), awarding "points" for minority participation in evaluation criteria (Pl.Exh.73–77), and awarding an entire contract to minority vendor overall low bidders rather than splitting the contract to give part to majority firms low bidding on some items (Pl.Exh.78–84). The rebuttal testimony of Mr. Cooper offered by the County as to these examples of the practices identified by Mr. Bruns *either*

*fails to address the exhibits relied upon by the Court or is contradicted by the documents.*

*Webster,* 51 F.Supp.2d at 1381–82. All this corroborative evidence was obtained through the document production and analysis. Because time spent on document production and analysis provided information that supported the core of Plaintiff's successful claims, it is compensable regardless of whether the same information was used for unsuccessful claims.

Second, Fulton County challenges the hours spent on additional review of documents to prepare the class certification motion. At the evidentiary hearing, Plaintiff segregated 59.0 hours spent by Deborah Barrow and 0.8 hours spent by Holli Hidden and admitted that those hours should have been included in the class certification category rather than document production and analysis. According to Plaintiff, these hours reflect time spent reviewing documents solely to prepare the class certification motion. The Court instructed Plaintiff to move the 59.8 hours to the class certification category and provide the Court with an amended summary calculation to reflect this change. Plaintiff has provided the Court with an amended summary calculation that moves these 59.8 hours and also another 5.6 hours to the class certification category. (Plaintiff's Amended Summaries in Support of Petition for Attorneys' Fees and Non–Taxable Costs, at 2.) [Doc. 344] It is that amended summary from which the Court is calculating Plaintiff's award. Accordingly, these hours are not discussed here but instead have been included in the Court's analysis of the class certification issue.

Third, Fulton County challenges certain time entries of associates that were logged under "Document Production & Analysis" instead of "Class Certification." Fulton County contends that these entries relate solely to class certification and, therefore, are not compensable. The challenged time entries are as follows: (1) 17.6 hours spent by Deborah Barrow on February 16–19, 1998, to "prepare written document concerning motion to certify class"; (2) 6.0 hours spent by Deborah Barrow on February 28, 1998, for "organization and indexing of master file and prepare docs for motion to certify class"; (3) 2.0 hours spent by Susan Rickertsen on February 12, 1998, to "review summaries of bid file reviews; identify examples of issues that might be pertinent to class motions and other matters; prepare note to Holli Hidden and Deborah Barrow;" and (4) 3.4 hours spent by Holli Hidden on February 14, 1998, to "compile evidence in support of motion for class cert." As to the first and second items noted above, Mr. Barge explained on cross-examination at the evidentiary hearing that the information compiled was used not only for the motion to certify the class but also as a source to determine possible witnesses for Plaintiff's case, to prove the existence of a pattern or practice of discrimination, and to discredit one of Fulton County's witnesses at the jury trial. As a result, these time entries are compensable because they do not relate solely to the class certification issue but instead played a role in Plaintiff's overall success in this case. As to the third item noted above, Plaintiff's amended summary moved these 2.0 hours from "Document Production & Analysis" to "Class Certification." Thus, Plaintiff's challenge to the inclusion of these 2.0 hours in this category is moot, and they have already been excluded by the Court's decision to exclude time spent on class certification. The same is true of the fourth item. Accordingly, none of Fulton County's objections here have merit.

■ Fourth, Fulton County challenges the billing judgment of Plaintiff on the grounds that Plaintiff's document production and analysis process was inefficient. Accordingly, Fulton County requests that this Court should reduce by 50% all hours spent on document production and analysis after the class certification motion was fully briefed on May 1, 1998. The Court disagrees. At the evidentiary

hearing, Plaintiff explained in great detail the method it employed for document production and analysis and its reasons for employing those methods. Mr. Barge testified that Plaintiff first requested that Fulton County provide it with a list of purchase orders within the MFBE program. According to Mr. Barge, approximately 4,000 purchase orders fell within this category. Several months after receiving the purchase order lists, Plaintiff requested access to the bid files that corresponded to each of the purchase orders to determine the County's bidding procedure, how bidders were treated in general, and whether minority bidders were treated differently. When Fulton County finally provided the first of these files to Plaintiff, counsel immediately noticed that the numbering system for the bid files was completely different from the purchase order lists. Furthermore, the files did not include purchase order numbers, so there was no way to know from the information in the bid file which bidder actually received the contract. Plaintiff had to go through each file gleaning all information there and not knowing what information would end up being beneficial. The goal was to match purchase orders to bid files and the identification of discrimination-related legal issues. To deal with Fulton County's confusing system, Plaintiff's counsel set up their own computer database in an attempt to organize documents they had reviewed and to prevent attorney duplication in review of the files.

Fulton County knew that it was providing Plaintiff with a confusing array of information, and it did nothing to make Plaintiff's task any easier. Plaintiff filed a Motion to Compel Fulton County to provide Plaintiff a list of bid files and their corresponding purchase orders. The Court refused to compel Fulton County to provide this information and instructed Plaintiff that it would have to do the work itself. Mr. Barge sent Fulton County's counsel a letter that Plaintiff would do the work itself but stated that it would be more efficient for Fulton County to assist

in the process. (Plaintiff's Brief in Support of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. A) [Doc. 191]. Most importantly, Mr. Barge informed Fulton County's counsel that if Plaintiff did the work itself, it would be very time-consuming. Mr. Barge warned that if Plaintiff won the case, the day would come when Fulton County would end up paying for this extra time expended by Plaintiff. That day has arrived. Fulton County was warned of the ramifications of its actions and nevertheless refused to assist Plaintiff's counsel. Fulton County is directly responsible, in part, for the enormous number of hours expended on document production and analysis in this case. The Court does not find that Plaintiff failed to exercise billing judgment in requesting full compensation for the efforts of counsel in performing this task. *See City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (stating that a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response"); *Shipes v. Trinity Indus.,* 987 F.2d 311, 321 (5th Cir.1993) (stating that "obstinate conduct by opposing counsel is compensated by the additional number of hours required to prevail over such obstinancy"); *Marbled Murrelet v. Pacific Lumber Co.,* 163 F.R.D. 308, 326 (N.D.Cal.1995) (stating that defendant's counsel "may have the right to play 'hardball' when defending its client's interests, but it should bear the costs associated with pursuing this type of obstructionist strategy").

Fifth, Fulton County challenges the time included in this category that relates to the dismissed retaliation and post–1996 claims. At the evidentiary hearing, Plaintiff responded that no documents obtained in the course of document production and analysis relate solely to the retaliation and post–1996 claims. Plaintiff did admit, however, that 4.3 hours were spent by Mr. Barge on January 19, 20, 23, and 27, 2000, on review of documents solely in regards to the retal-

iation and post–1996 claims. Plaintiff also admitted that 8.5 hours of the 10 hours spent by Mr. Patrick McKee on document production and analysis between the bench and jury trials related solely to the retaliation and post–1996 claims. Plaintiff's amended summary filed after the evidentiary hearing at the Court's instruction removed these hours. Accordingly, this objection is moot.

■ Sixth, Fulton County challenges the travel time that Plaintiff has attributed to document production and analysis. Fulton County contends that the 75.9 hours that Plaintiff's attorneys expended traveling to Fulton County's offices to conduct document production and analysis should be excluded. Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis. *See Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.1983) (discussing compensation of travel time in calculation of reasonable hours). At the evidentiary hearing, Mr. Barge explained his policy for counting travel time in this case. Where an attorney was traveling between the firm's office and Fulton County's offices, Mr. Barge instructed the attorney to count her travel time. Where, however, the attorney was traveling between home and Fulton County's offices, as might occur at the beginning or end of a work day, Mr. Barge instructed the attorney not to count her travel time. This does not seem to the Court to be an unreasonable policy. As to the issue of billing judgment regarding travel time, Plaintiff's records show that its attorneys typically billed about 15 minutes for travel on foot each way between their offices near Peachtree Center and Fulton County's offices further downtown. As Fulton County alerts the Court, it is true that some of the entries reflect somewhat greater travel time, while others reflect somewhat less travel time. On average, though, the travel time each way was about 15 minutes. The Court finds nothing unreasonable in this calculation. Ac-

cordingly, no hours are excluded for improper travel time.

■ Seventh, Fulton County challenges time in this category that it considers performance of clerical work by an attorney. Specifically, it challenges 20.0 hours spent by Mr. Barge, 3.0 hours spent by Ms. Rickertsen, 114.7 hours spent by Ms. Hidden, and 147.5 hours spent by Ms. Barrow, for a total of 285.2 hours challenged. Plaintiff responds that it was necessary for file administration of the document production process to be performed by an attorney because of the sheer complexity of the case and the need for legal knowledge to separate the files by relevant issues. The work conducted was not simply data entry but rather correlation of facts to legal issues. As discussed above, at the evidentiary hearing Plaintiff explained in great detail exactly how it organized the documents obtained in this case and why it did so. Based on that testimony, this Court concludes that the hours Fulton County contests as "clerical work" actually was work that required the skills of someone with legal training. Accordingly, the hours challenged here are neither excluded from the fee award nor compensated at a reduced rate.

Eighth, Fulton County challenges the time that Mr. Barge spent training an associate on how to review, organize and catalog the documents obtained from Fulton County. Specifically, Fulton County objects to 4.0 hours attributed to Mr. Barge and 2.5 hours attributed to Ms. Rickertsen. The Court concludes that this time is compensable for the same reasons that time spent on alleged "clerical work" is compensable. Accordingly, these 6.5 hours are not excluded. For the reasons set forth above, the Court concludes that 2,444.0 hours spent on document production and analysis in this case is not excessive. In reaching this conclusion, the Court is mindful that it took the Court two full days just to review the documents that were introduced in evidence at the bench trial.

### v. WRITTEN DISCOVERY

 Plaintiff requests fees for 235.7 hours expended on written discovery. According to Plaintiff, work related to written discovery is divided as follows: Mason Barge—32.2 hours; Patrick McKee—100.4 hours; Deborah Barrow—73.9 hours; Holli Hidden—3.8 hours; and Susan Rickertsen—25.4 hours. Fulton County has challenged all written discovery conducted before May 1, 1998 on grounds that it necessarily must relate to the class certification issue. As the Court explained above in the "Document Production & Analysis" category, this contention is meritless. Fulton County has not made any other challenge to time in this category. Given both the factual complexity of this case and its protracted nature, the Court concludes that 235.7 hours spent on written discovery is not excessive. Accordingly, all time in this category is compensable.

### vi. OTHER INVESTIGATION & BACKGROUND RESEARCH

 Plaintiff requests fees for 130.9 hours related to other investigation and background research. According to Plaintiff, work related to this task is divided as follows: Mason Barge—48.4 hours; Patrick McKee—39.4 hours; Deborah Barrow—24.8 hours; Holli Hidden—10.8 hours; Susan Rickertsen—4.5 hours; and Dan McKee—3.0 hours. Fulton County challenges the following items in this category: First, Fulton County challenges 0.3 hours Mr. Barge spent on March 31, 1998 reviewing information from the State of Georgia's Attorney General's office regarding Georgia's Open Records Act. This background research related to obtaining documents for Plaintiff's retaliation and post–1996 claims. Second, Fulton County challenges an estimated 25 hours that Plaintiff spent on Open Records Act requests for 1997, 1998, and 1999 documents related to its post–1996 claims. Third, Fulton County challenges 0.5 hours that Mr. Barge spent on August 18, 1998, reviewing a document related to Commis-

sioner Emma Darnell and a letter that Mr. Barge wrote to Fulton County's counsel based on the document. Fulton County contends that this time should be omitted because Ms. Darnell was dismissed from the case. Fourth, Fulton County challenges 4.0 hours on April 17, 1998, that Mr. Barge spent reviewing depositions and researching prerequisites for injunctive relief and the standing of Mr. and Mrs. Webster, which the Court ultimately found lacking. Fifth, Fulton County challenges 0.6 hours logged in this category on January 21, 1998, by Patrick McKee for reviewing documents related to Plaintiff's reply brief to its Motion to Contact Class Members.

As to the first two challenges, the Court concludes that time spent on these activities is compensable. Although the post–1996 claims were dismissed, they nevertheless remained relevant to issues of Webster Green Thumb's standing which Fulton County has persistently and unsuccessfully challenged throughout this litigation. Thus, the Open Records Act research that Plaintiff conducted and the documents that Plaintiff obtained from that research relate to a successful aspect of this case, and not simply dismissed claims. The third challenge is also without merit. Although Ms. Darnell was dismissed from this case, the government body of which she is a commissioner, Fulton County has remained a party. Plaintiff's contacts with Ms. Darnell related not merely to her as an individual, but as an officer of Fulton County. The 0.5 hours that Mr. Barge spent reviewing a document and writing a letter related to Ms. Darnell is compensable. Fulton County's fourth challenge is warranted in part. The time spent on the standing of the Websters is noncompensable. The other tasks described in this entry are compensable. If Plaintiff had included its standing research here with time it spent responding to one of Fulton County's dispositive motions, such as its Motion for Summary Judgment, this Court clearly would exclude the time. There is no reason the Court should not do so

simply because Plaintiff instead has placed the research in an "Other Investigation & Background Research" category. Accordingly, this Court thus apportions the time in accordance with Judge Forrester's practice in *Duckworth v. Whisenant,* No. 1:89–CV–1102–JOF (N.D.Ga. Jan. 31, 1995), aff'd, 97 F.3d 1393, 1397 (11th Cir.1996), where the Court did not exclude entire combined entries, but instead attempted to apportion time to each activity in an even-handed manner. The Court concludes that 1.5 hours fairly reflects the time spent on standing in this April 18, 1998, entry. As to Fulton County's fifth challenge, the Court also agrees that the time is noncompensable. Those 0.6 hours should have been included in the "Class Certification" category which the Court has excluded in its entirety. Since they were not included in that category, they are excluded here. Otherwise, Plaintiff's requested time in this category is not excessive. Accordingly, 128.8 hours are compensable.

### vii. EXPERT REPORTS

Plaintiff requests fees for 190.0 hours related to both Plaintiff's and Fulton County's expert reports. According to Plaintiff, work related to this task is divided as follows: Mason Barge—140.6 hours; Patrick McKee—47.5 hours; Deborah Barrow—1.9 hours. Fulton County has not challenged any of the time in this category at all, or at least not with such specificity as to alert the Court that a reduction is warranted. *See Hensley,* 461 U.S. at 437, 103 S.Ct. 1933 (stating that objections and proof concerning hours that a party wants excluded must be specific and "reasonably precise"). Accordingly, Plaintiff is entitled to fees for all hours that it requests on the task of "Expert Reports."

### viii. DISCOVERY MOTIONS

Plaintiff requests fees for 123.5 hours related to the parties' various discovery and pre-trial motions. According to Plaintiff, work related to this task is divided as follows: Mason Barge—65.8 hours; Patrick McKee—51.5 hours; Holli Hidden—6.2 hours. Fulton County asks that this Court look at each of these motions, determine which party won the motion, and reduce Plaintiff's fee award for motions on which it did not succeed. These challenges include time Plaintiff spent on unsuccessful motions to compel and attendance at hearings and conferences where Plaintiff was at least partially unsuccessful. The United States Supreme Court has admonished federal courts not to split a case into the smallest atoms possible. *See Commissioner, INS v. Jean,* 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (stating that "fee-shifting statutes favor [ ] treating a case as an inclusive whole, rather than as atomized line-items"). Likewise, the Eleventh Circuit has instructed its district courts to focus on "the significance of the overall results as a function of total reasonable hours," *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988), and has informed litigants that "[t]he theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1187 (11th Cir.1983). This Court believes that it would be ignoring these instructions if it evaluated each discovery motion in this case on the basis of which side prevailed and then apportioned a fee award on that basis. It is the nature of the litigation process that parties often will disagree on the course of discovery. Plaintiff's counsel did not take unreasonable positions in the discovery disputes although they did not always get everything that they wanted. A party that prevails on the overall case should not be penalized simply because it did not succeed on each contention raised. *Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Accordingly, this Court refuses to separate each of the discovery motions in this case by success rate. All time spent by Plaintiff on discovery motions is compensable.

At the evidentiary hearing, Plaintiff conceded that 30.5 hours spent attempting to

compel documents relating solely to the retaliation claim is noncompensable. Plaintiff informed the Court that it would exclude that time from its final calculation, and it appears to have done so in its amended summary. Accordingly, Fulton County's argument on that issue is moot. Otherwise, all compensation requested for time spent on discovery motions is granted. Given both the factual complexity of this case and its protracted nature, the Court concludes that 123.5 hours spent on discovery motions is not excessive.

### ix. MOTIONS FOR SUMMARY JUDGMENT

Plaintiff requests fees for 395.7 hours related to the parties' summary judgment motions. According to Plaintiff, work related to this task is divided as follows: Mason Barge—201.2 hours; Patrick McKee—169.7 hours; Deborah Barrow—24.8 hours. Fulton County challenges the time that Plaintiff spent on these motions that related to the dismissed Plaintiffs and Defendants and the dismissed retaliation and state-law claims. Specifically, Fulton County contends that the Court should attribute (1) 5% of the time spent on motions for summary judgment to the retaliation claim, (2) 5% of the time spent on the motions for summary judgment to the dismissal of the Websters as Plaintiffs, (3) an additional 5% of the time spent on the motions for summary judgment to the dismissal of Goff as a Plaintiff, and (4) 10% of the time spent on the motions for summary judgment to the dismissed Defendants. After careful review, the Court concludes that 5% is a fair amount of time that the Plaintiff spent on the discrete and unsuccessful retaliation and state-law claims in the summary judgment motions. Likewise, 5% fairly approximates the time spent on the standing of the Websters, which the Court ultimately found lacking. As to Goff, the Court concludes that 2% is a fairer approximation than 5% of the time spent on his standing. As to the dismissed Defendants and their immunity arguments, the Court concludes that 5% fairly approximates the time spent on those discrete and unsuccessful claims in this case. Accordingly, the time that Plaintiff spent on the motions for summary judgment is reduced by 17% to reflect this lack of success on discrete and unsuccessful claims and issues. This reduction is apportioned among each member of the firm who worked on the motions. Otherwise, time spent on these motions is compensable. Given the factual complexity of this case, especially the plethora of documentary evidence that Plaintiff had to condense and explain at the summary judgment stage, the Court concludes that 328.4 hours spent on the summary judgment motions, response briefs, and reply briefs is not excessive.

### x. OTHER PRE-TRIAL MOTIONS

Plaintiff requests fees for 333.9 hours related to pre-trial motions and hearings for both the bench trial and the jury trial. According to Plaintiff, work related to this task is divided as follows: Mason Barge—134.1 hours; Patrick McKee—199.8 hours. As with the discovery motions, Fulton County asks the Court to look at each of these motions, determine which party won the motion, and reduce Plaintiff's fee award for motions on which it did not succeed. These challenges include motions to exclude, a motion to disqualify, motions for reconsideration, motions in limine, part of Plaintiff's proposed draft of the Pre-Trial Order, attendance at hearings and conferences where Plaintiff was at least partially unsuccessful, and even proffers. For the same reasons elaborated in the "Discovery Motions" section, the Court refuses to separate each of the pretrial motions by success rate and then apportion a fee award on that basis. Again, Plaintiff's counsel did not take unreasonable positions in the pretrial motions although they did not always get what they wanted.

This Court does, however, exclude from the fee award time spent on one pretrial motion that it considers "discrete and unsuccessful." *See Duckworth v. Whisen-*

*ant,* 97 F.3d 1393, 1397 (11th Cir.1996) (deducting time spent on "discrete and unsuccessful claims"). The Court granted summary judgment in favor of Fulton County on Plaintiff's retaliation claims. The Court held:

> The Defendants contend that the Plaintiffs' retaliation claim fails due to insufficient evidence and the absence of a retaliation claim where the government fails to award contracts to independent contractor bidders. This Court has found no authority to support a specific retaliation claim under Section 1981 or the Equal Protection Clause for the local government's failure to award contracts to independent bidders. Accordingly, the Court finds that the Defendants are entitled to summary judgment as to the Plaintiffs' retaliation claim in Count VI of the Second Amended Complaint.

*Webster,* 44 F.Supp.2d at 1381 (citations omitted). Nevertheless, throughout the rest of this case, Plaintiff repeatedly asked the Court to reconsider this decision. Each time the Court refused. Accordingly, the Court excludes the following entries because they apply to an issue that Plaintiff continually reasserted and that the Court each time refused to reconsider: 1.1 of the 11.0 hours that Patrick McKee spent on August 30 and 31, 1999, preparing for and attending a hearing at which he argued for reconsideration of the retaliation claim; 0.5 hours that Mason Barge spent on July 1, 1999, on "[l]egal research re retaliation under 1981; telephone conference with [Patrick McKee] re same"; 0.5 hours that Mason Barge spent on July 7, 1999, in a "[t]elephone conference with [Patrick McKee] re motion for reconsideration of retaliation claim"; 0.2 of the 0.4 hours that Mason Barge spent on July 8, 1999, in a "[t]elephone conference with [Patrick McKee] re retaliation claim, bill of costs"; and 5.4 of the 54 hours that Patrick McKee spent on the Pre–Trial Order in November 1999.

 One of Fulton County's meritless objections in this area deserves some dis-

cussion. Fulton County has challenged the time spent on Plaintiff's Motion to Disqualify [Doc. 214]. Plaintiff filed a Motion to Disqualify Fulton County's counsel from representing both Fulton County and Michael Cooper on grounds that an inherent conflict of interest existed. Plaintiff filed this motion only after the Court raised the issue itself at an August 31, 1999, hearing. As the Court later explained:

> The potential conflict is that if Defendant Cooper contends that he took certain action pursuant to the County's MFBE Plan, the County would be liable but Mr. Cooper could claim qualified immunity. On the other hand, if Mr. Cooper denies that he took any action pursuant to the MFBE Plan, and the jury finds that his actions were discriminatory, Mr. Cooper may be subject to compensatory and punitive damages while the County escapes any liability.

*Webster v. Fulton County,* No. 1:96–CV–2399–TWT (N.D.Ga. Nov. 18, 1999). Eventually, the Court determined that Fulton County and Mr. Cooper had both adequately consented to the joint representation, and Plaintiff's Motion to Disqualify was denied. *Id.* Nevertheless, just because the Court found that "[t]he potential conflict was not so overwhelming as to checkmate the Defendants' voluntary choice of counsel," *id.,* it cannot be said that Plaintiff's Motion to Disqualify was "clearly without merit." *See Popham v. City of Kennesaw,* 820 F.2d 1570, 1579 (11th Cir.1987) ("[I]t is clear that '[t]ime spent pursuing unsuccessful claims that were clearly without merit should be excluded.'"). The facts show that an issue of conflict did exist and that Defendants' counsel remedied it only after the issue was raised by the Court and Plaintiff. Plaintiff's motion, therefore, was not frivolous and the time spent on it is compensable. In all, the Court compensates Plaintiff for 326.2 hours spent on pre-trial motions and hearings. Given the factual complexity of the case and the amount of

procedural wrangling that occurred, the Court concludes that 326.2 hours spent on pre-trial motions and hearings is not excessive.

### xi. BENCH AND JURY TRIALS

■ Plaintiff requests fees for 1,179.8 hours for the bench and jury trials. Plaintiff states that 604.9 hours were expended on the bench trial and another 574.9 hours were expended on the jury trial. According to Plaintiff, the hours spent on the trials are divided as follows: Mason Barge—317.5 hours; Patrick McKee—728.0 hours; Dan McKee—134.3 hours. In this category, Fulton County challenges round-number billing engaged in by Patrick McKee under the heading "trial preparation." According to Fulton County, all but one or two of Plaintiff's entries here are rounded to the hour or half-hour. Fulton County has presented no evidence that these entries are inaccurate. It simply challenges round-number billing *per se.* The Court concludes that this practice during the trial and the days leading up to it is not so egregious as to warrant a reduction. It is quite likely that on some days Mr. McKee spent more than a round-numbered amount of time at trial or preparing for it, while other days he possibly spent less. Thus, the hours listed are likely a fair reflection of time actually spent. Fulton County has not shown that is not the case. Accordingly, this challenge is rejected. Significantly, Fulton County has not shown that its outside counsel billed the County for materially less time for the trials.

■ Fulton County also contends that one-fourth of the time that Patrick McKee spent on the jury trial and preparation for it should be excluded since Plaintiff lost on its punitive damages claim. According to Fulton County, time attributed to Patrick McKee should be excluded to the extent of 111.5 hours for this reason. The Court disagrees. At the evidentiary hearing, Mr. Barge and Mr. Patrick McKee stated that they would not have tried this case any differently even if there had not been a claim for punitive damages. All activities conducted in this case, including Plaintiff's questioning of Michael Cooper on cross-examination, related to the underlying claim for compensatory damages, as well as the punitive damages claim. It was not the questions asked that determined whether punitive damages would be awarded, but rather the answers that Mr. Cooper provided and the jury's interpretation of whether Mr. Cooper acted with the requisite malice. Since the jury felt he had not acted with the requisite malice, no punitive damages were awarded. Compensatory damages, however, were awarded, in some measure based on the cross-examination of Mr. Cooper by Plaintiff's counsel. As the undersigned was present at the trial, it is his conclusion that Plaintiff's case would not have been conducted any differently even if the Court had not allowed a claim for punitive damages to be presented to the jury. Accordingly, the Court will not exclude the 111.5 hours to which Fulton County objects here.

Fulton County also seeks to exclude time logged in this category for research and argument related to Daniel and Peggy Webster's standing. The specific time entries challenged are as follows: (1) that part of the 11.8 hours that Mason Barge spent on May 8, 1999, that related to "research re standing of shareholders"; (2) that part of the 9.5 hours that Mason Barge spent on May 15, 1999, on "legal research on standing"; (3) that part of the 8.0 hours that Mason Barge spent on May 20, 1999, to "[d]raft, edit, file, and serve Reply Brief on Standing"; and (4) 2.0 hours that Mason Barge spent in a May 21, 1999, court appearance on the standing issue. The Court agrees that these items should be excluded from the fee award. Each entry relates to the standing of the Websters, and the Court ultimately concluded that they did not have standing. Accordingly, 2.0 hours are excluded for item (4); and the Court concludes that 1.8 hours is a fair reflection of

the hours actually expended on standing in item (1); 2.0 hours is a fair reflection for item (2), and 6.0 hours is a fair reflection for item (3). Accordingly, 11.8 hours are noncompensable here for work solely related to the Websters' standing as Plaintiffs. Plaintiff's amended summary, however, shows that 10.5 of these hours have already been removed from the fee petition. Accordingly, only the remaining 1.3 hours not already eliminated is excluded here. Otherwise, the 1,178.5 hours requested are compensable.

### xii. MISCELLANEOUS CORRESPONDENCE AND CONFERENCES

Plaintiff requests fees for 166.3 hours spent on miscellaneous correspondence and conferences pertaining to this case. According to Plaintiff, work related to this task is divided as follows: Mason Barge—72.4 hours; Patrick McKee—71.4 hours; Deborah Barrow—5.5 hours; Holli Hidden—10.9 hours; Susan Rickertsen—6.1 hours. Fulton County challenges a number of entries in this category on grounds that they relate solely to the noncompensable issue of class certification. First, Fulton County challenges all conferences held by Plaintiff's counsel before it filed its final reply brief on class issues on May 1, 1998. As this Court has explained twice already in this Order, this argument by Fulton County is without merit. Fulton County cannot simply allege that all time spent by Plaintiff in this case until May 1, 1998, relates solely to class issues. Accordingly, no time is excluded for this reason.

Second, Fulton County challenges a number of entries that on their face reflect that they apply to class certification: (1) 0.5 hours Mason Barge spent on December 12, 1997, in an "office conference with [Patrick McKee] re: class members, various issues"; (2) 0.4 hours Mason Barge spent on January 21, 1998, in an "office conference with [Patrick McKee] re: contacting potential class members"; (3) 0.5 hours Patrick McKee spent on April 29, 1998, in "consultation regarding class cert issues

with [Mason Barge]"; (4) 0.3 hours Susan Rickertsen spent on February 4, 1998, involving "office conference with Mason Barge and legal research on motion to certify class"; (5) 0.2 hours Susan Rickertsen spent on February 9, 1998, in an "office conference with Mason Barge on motion to certify class"; (6) 0.2 hours Holli Hidden spent on February 26, 1998, in an "office conference with Mason Barge re: evidence in support of motion for cert"; and (7) 0.8 hours Holli Hidden spent on February 27, 1998, to "compile evidence in support of motion for class cert." The Court agrees that these entries on their face appear to relate solely to class issues. Plaintiff has done nothing to refute this appearance. Accordingly, these 2.9 hours are excluded from the fee award.

Third, Fulton County challenges an entry that appears to relate solely to class certification based on the date of entry: 0.4 hours Patrick McKee spent on January 21, 1998. to "receive and review document concerning reply brief and consultation with [Mason Barge]." Plaintiff's reply brief for its Motion to Contact Class Members was filed January 22, 1998, the day after this entry. No other reply briefs were filed by Plaintiff near this date. Accordingly, the evidence supports a finding that this time relates solely to class issues. Accordingly, 0.4 hours is excluded.

Fourth, Fulton County challenges entries that appear to relate solely to dismissed Plaintiffs: (1) 4.1 hours Susan Rickertsen spent on September 15, 1997, to "respond to written discovery (telephone conferences with Alex Marchetti and Willie Hill; office conferences with Mason Barge and Pat McKee; draft responses to interrogatories and document requests)"; (2) 1.0 hour Susan Rickertsen spent on September 16, 1997, regarding "preparation for and attendance at meeting with Willie Hill, Alex Marchetti, Mason Barge, and Pat McKee"; (3) 0.5 hours Patrick McKee spent on September 16, 1997, attending the same meeting; (4) 0.1 hours Susan Rickertsen spent on Septem-

ber 25, 1997, in a "telephone conference with Alex Marchetti re: Minority and Willie Hill withdrawing; office conference with Mason Barge"; (5) 0.5 of 1.0 hour that Patrick McKee spent on March 25, 1998 in "consultation regarding status of Min. Dist. and Goff, correspondence with Mr. Wiener on status of documents, review additional documents produced"; (6) 1.0 of the 2.0 hours Patrick McKee spent on March 31, 1998, to "receive and review document concerning deposition of Skandalakis, conference with Mr. Barge on Min. Dist., review correspondence with Mr. Wiener on responses to discovery"; and (7) 0.5 hours Mason Barge spent on October 13, 1998, on a "letter and form withdrawal to Willie Hill/MDC." After careful review, the Court agrees that the time reflected in the first four and the seventh entries should be stricken from the fee award entirely. All these entries appear to relate solely to the withdrawal of dismissed Plaintiff Minority Distributing Corp. The Court also agrees that part of the fifth and sixth entries should be excluded from the fee award on grounds that part of the listed time applies solely to dismissed Plaintiffs. The Court, however, believes that 0.5 hours is a more fair reflection in item (6) of the amount of time that Mr. McKee likely spent in conference with Mr. Barge regarding Minority Distributing Corp. This Court thus apportions Items (6) and (7) in accordance with Judge Forrester's practice in *Duckworth v. Whisenant,* No. 1:89–CV–1102–JOF (N.D.Ga. Jan. 31, 1995), *aff'd,* 97 F.3d 1393, 1397 (11th Cir.1996), where the Court did not exclude entire combined entries, but instead attempted to apportion time to each activity in an even-handed manner. The Court concludes that 7.2 hours should be excluded for time spent involving conferences and correspondence on dismissed Plaintiffs. In all, a total of 10.5 hours are excluded in this category for noncompensable conferences and correspondence. Otherwise, 155.8 hours are compensable. Given both the factual complexity of this case and its protracted nature, the Court concludes that the 155.8 hours spent on miscellaneous correspondence and conferences is not excessive.

### xiii. OTHER MISCELLANEOUS MATTERS

Some of Fulton County's objections cut across numerous categories and cannot adequately be addressed within one specific category. Other objections do not fall neatly within any category. Accordingly, the Court addresses them here to ensure that it has not neglected to consider any of Fulton County's objections. First Fulton County challenges all time related to Plaintiff's post–1996 claims. Some of the time spent on these claims has been discussed above. Other time spent on these claims does not fall neatly within a single category. Whatever the category, the Court's ruling is the same. Even though the claims did not succeed, they were integral to Webster Green Thumb's standing in this case. Accordingly, all time spent on the post–1996 claims is compensable.

Second, Fulton County challenges all time attributable to Daniel McKee on grounds that he has not been trained in paralegal duties. In *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Supreme Court held that paralegal time is compensable in the same manner as attorneys' fees. *Id.* While it is true that time for secretaries, office managers, and other administrative personnel is deemed to be subsumed into an attorney's market rate, the same is not true for paralegals, law clerks, and other legal assistants to the extent they perform work traditionally performed by an attorney *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988). The question then is whether the time billed by Daniel McKee in this case is work traditionally performed by an attorney. The time Daniel McKee spent at the bench and jury trials constitutes 134.3 of the 197.9 hours attributed to him in this case. Another 58.4 hours of his time relates to document production. Thus, 97% of his

time billed in this case relates to these two tasks. This Court observed the activities of Daniel McKee at trial where he played an integral role assisting counsel in the presentation of its case. Furthermore, the work that Daniel McKee performed on document production and analysis does not appear materially different than the work that the associate attorneys performed. Finally, the record supports Patrick McKee's affidavit that he "was careful to separate true paralegal work from administrative work that Dan did in this case and did not bill Fulton County for administrative work." (Plaintiffs' Reply in Support of Plaintiffs' Supplemental Motion for Award of Attorneys' Fees and Expenses of Litigation, Ex. C.) [Doc. 338]. Both sides had paralegal assistance throughout the trials. Accordingly, the Court concludes that the time attributed to Daniel McKee in this case is compensable. "To hold otherwise would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost." *Jean,* 863 F.2d at 778.

Third, Fulton County challenges a 35–hour entry by Patrick McKee on January 30, 1997. Fulton County contends that the correct entry is 3.5 hours. Fulton County is correct. The summary calculation of Patrick McKee's time states that he spent 35 hours on "Other Motions, Hearings, Etc." on January 30, 1997. The actual billing records for that day show that McKee spent 3.5 hours on "[p]reparation for and attendance at hearing." Accordingly, 31.5 of the 35 hours attributed to Patrick McKee for January 30, 1997, are excluded due to this obvious clerical error.

Fourth, Fulton County challenges two identical entries logged by Patrick McKee on July 25, 1998. Both entries pertain to researching and drafting Plaintiff's Motion for Summary Judgment. One entry is for 8.0 hours. The other is for 6.0 hours. Fulton County has raised this discrepancy but Plaintiff has not explained it. Accord-

ingly, the Court excludes the entry of 6.0 hours.

Fifth, Fulton County challenges time that it believes was spent on the appeal of the case, which is noncompensable at this stage. Specifically, Fulton County challenges the following entries in Plaintiff's billing records: (1) 3.0 of the 6.0 hours that Patrick McKee spent on July 22, 1999, to "[c]omplete fee affidavit; review docket and notice of appeal, and [t]elephone conference with Linda Baggett on transcript; trip to district court to order transcript, check status of notice of appeal and file civil appeal statement"; (2) 0.5 of the 3.0 hours that Patrick McKee spent on September 27, 1999, involving "[c]ontingent telephone conference with Ms. Sewell, review schedule and draft letter on PTO, listen to tape, [t]elephone conference with [Mason Barge] on appeal and review response on motion to disqualify"; (3) 0.5 of the 1.0 hours that Patrick McKee spent on October 25, 1999, regarding "[t]elephone conference with [Mason Barge] on strategy for appeal and trial"; and (4) 3.0 hours that Mason Barge spent on February 24, 2000, in "conference with [Patrick McKee] and Daniel Webster on possible post-trial motions, future of case." The Court finds all of these challenges without merit. The hours expended by Patrick McKee in items (1)–(3) have never been included in the fee petition. They are listed in the billing records, but not in the calculation that underlies the fee petition. As to item (4), this Court agrees with Plaintiff that it is reasonable for counsel and a client to spend 3.0 hours after a trial discussing post-trial motions, such as the petition for attorneys' fees, and the possibility of future proceedings in the district court. Fulton County has failed to elicit evidence that these 3.0 hours related in any way to appellate process. Accordingly, the time is compensable.

Sixth, Fulton County challenges certain clerical, courier, and duplicative time, along with other "inappropriate charges." Plaintiff concedes that the following en-

tries should be excluded and has removed them in its amended summary: (1) 1.0 hours that Daniel McKee spent on January 17, 2000, to copy and deliver a brief; (2) 2.5 hours that Daniel McKee spent on February 25, 2000, to organize documents for storage; (3) 1.0 hours that Holli Hidden spent on December 30, 1997, in an office conference; (4) 0.3 hours Susan Rickertsen spent on November 22, 1996, sending a copy to someone. Accordingly, these objections are now moot. Fulton County also challenges 1.5 hours that Holli Hidden spent on January 22, 1998, drafting a memo regarding lunch access at the Fulton County Government Building. Plaintiff responds that this time is compensable because it relates to remedying untenable conditions its counsel incurred during document production. The Court agrees with Fulton County that this time should not be compensable. First of all, the Court does not think that the time spent on this memo should be compensated at all. Second, even if that were not the case, a 1.5–hour memo on lunch seems excessive. Accordingly, 1.5 hours is excluded.

### xiv. PREPARATION OF ATTORNEYS' FEES REQUESTS

Plaintiff requests fees for 156.0 hours spent on its request for attorneys' fees, including the evidentiary hearing on the fee request. According to Plaintiff, work related to this task is divided as follows: Mason Barge—113.2 hours; Patrick McKee—37.5 hours; Susan Rickertsen—5.3 hours. Fulton County has not challenged any of the time in this category at all, or at least not with such specificity as to alert the Court that a reduction is warranted. See Hensley, 461 U.S. at 437, 103 S.Ct. 1933 (stating that objections and proof concerning hours that a party wants excluded must be specific and "reasonably precise"). Accordingly, Plaintiff is entitled to fees for all hours that it seeks for the task of "Preparation of Attorneys' Fees Requests."

### b. REASONABLE HOURLY RATE

The second half of the lodestar calculation is the determination of a "reasonable hourly rate" for the attorneys' services. Reasonable hourly rates for the purposes of Section 1988 are to be measured by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 & n. 11, 104 S.Ct. 1541; ACLU of Ga. v. Barnes, 168 F.3d 423, 436 (11th Cir.1999). The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. Dillard v. City of Greensboro, 213 F.3d 1347, 1354–55 (11th Cir.2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid 'as determined by supply and demand.'"); see also National Assoc. of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1325 (D.C.Cir.1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."). A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. Duckworth v. Whisenant, 97 F.3d 1393, 1396–97 (11th Cir.1996). Finally, the Court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case, see id. ("This Court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."), but the Court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support, NAACP v. City of Evergreen, 812 F.2d 1332, 1334, 1336 (11th Cir.1987).

In determining a reasonable hourly rate, the Eleventh Circuit Court of Appeals has provided a list of factors for its district courts to consider.[1] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Although some courts now apply these factors only in determining whether to grant an enhancement to the lodestar, the Supreme Court has stated that these factors usually are subsumed in the lodestar calculation. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Accordingly, the Court includes them in its analysis of reasonable hourly rates in this case. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 & n. 7 (11th Cir.1999) ("The [trial] court properly considered the reasonable attorney fee guidelines the former Fifth Circuit outlined in *Johnson* [ ], which we have subsequently adopted for reasonable fee determinations for prevailing parties."); *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299(11th Cir.1988) ("We still believe that at least some of the *Johnson* factors have utility in establishing the hourly rate."); *NAACP v. Evergreen*, 812 F.2d 1332, 1336–37 (11th Cir.1987) (suggesting that *Johnson* factors might still be considered in terms of their influence on the lodestar amount); *Carey v. Rudeseal*, 721 F.Supp. 294, 298–99 (N.D.Ga.1989) ("The Eleventh Circuit has indicated that some of the factors set out in *Johnson* [ ] may still have utility in establishing the hourly rate at which a prevailing attorney should be compensated. This is particularly true where there is an issue as to the appropriate rate."). The twelve *Johnson* factors are as follows:

1) the time and labor required;

2) the novelty and difficulty of the questions;

3) the skill requisite to perform the legal service properly;

4) the preclusion of other employment by the attorney due to acceptance of the case;

5) the customary fee;

6) whether the fee is fixed or contingent;

7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;

9) the experience, reputation and ability of the attorneys;

10) the "undesirability" of the case;

11) the nature and length of the professional relationship with the client;

12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19; *accord Farley*, 197 F.3d at 1340 n. 7; *Gaines v. Dougherty County Bd. of Ed.*, 775 F.2d 1565, 1571 n. 13 (11th Cir.1985); *Jones v. Central Soya Co.*, 748 F.2d 586, 588 n. 1 (11th Cir.1984); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 n. 8 (11th Cir. 1983). These factors are taken verbatim from a previous version of the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106, which guides attorneys in deciding upon a reasonable fee for legal services. A court in its order ideally should state how any of these factors has influenced its determination of a reasonable hourly rate. *See Johnson v. University College*, 706 F.2d 1205, 1210 (11th Cir.1983) ("As it should have, the court considered all of the *Johnson* factors, indicating how, if at all, each influenced the fee award.").

Accordingly, this Court determines the reasonableness of the hourly rate in this case based on the customary rates that Plaintiff's counsel and other attorneys of comparable skill, experience and reputation in the Northern District of Georgia typically charge in civil rights cases. In

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

addition, this Court takes into account the *Johnson* factors to the extent they affect the reasonableness of the rate. Plaintiff contends that the range of reasonable hourly rates for attorneys of the same skill, experience and reputation as Mason Barge and Patrick McKee is $225.00 to $275.00 per hour and that Messrs. Barge and McKee should be compensated at $275.00 per hour. Defendant responds that $225.00 is the rate at which Messrs. Barge and McKee should be compensated. In support of the $275.00 hourly rate, Plaintiff has provided the Court with the following evidence:

1. An affidavit and supplemental affidavit by Mason Barge. The original affidavit stated that Mr. Barge graduated from Emory University Law School in 1977 and has practiced law in Atlanta, Georgia since that time, with a practice that has concentrated entirely in the fields of constitutional law, race discrimination and labor law. (Plaintiff's Brief in Supp. of Specification and Itemization of Atty.'s Fees and Non–Taxable Costs, Ex. E.) [Doc. 191]. Mr. Barge stated that most of his work is done on contingency rather than an hourly rate, but that he charges $225.00 per hour for all work that he does perform on an hourly rate basis. He also stated that he believes that he is entitled to a rate of $275.00 per hour in this case based on his application of the *Johnson* factors to the facts of his representation. The supplemental affidavit informs the Court that on April 1, 2000, Mr. Barge raised his hourly rate for fee-based clients to the range of $250.00 to $275.00 per hour and that it is his intention not to accept any more non-contingent work at a rate less than $250.00 per hour, except in special cases of charity work, pro bono work, or work for close friends and family. (Plaintiff's Reply in Supp. of Plaintiff's Supplemental Mot. for Award of Attys.'

Fees and Expenses of Litigation, Ex. D.) [Doc. 338]

2. An affidavit by Patrick McKee stating that he is a 1977 graduate of Emory University Law School and has practiced in Georgia since that time. (Plaintiff's Brief in Support of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. F.) [Doc. 191] Mr. McKee's principal expertise is in the area of education law. Mr. McKee served for ten years as an assistant and senior assistant attorney general in the State of Georgia's Law Department representing the State's Board of Regents and Board of Education. Mr. McKee stated that he typically charges between $150.00 and $250.00 per hour to those clients he does not serve as general counsel or represent on contingency. He further stated that he is no longer accepting any new hourly litigation clients for less than $250.00 per hour.

3. An affidavit by Mr. Griffin Bell, Jr., a senior partner in the Atlanta labor and employment firm of Fisher & Phillips, stating that he has practiced law in Georgia since 1970, has known Messrs. Barge and McKee for more than ten years, and is of the opinion that $275.00 is a reasonable hourly rate for the work done in this case. (Plaintiff's Brief in Support of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. B.) [Doc. 191]

4. An affidavit by Mr. W. Henry Parkman, a partner in the Atlanta construction law firm of Griffin, Cochrane & Marshall. (Plaintiff's Brief in Support of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. C.) [Doc. 191] Mr. Parkman has practiced law in Georgia since 1983 and represented the plaintiffs in two affirmative action contracting cases, *Engineer-*

*ing Contractors Association v. Metropolitan Dade County,* 122 F.3d 895, 900 (11th Cir.1997), and *S.J. Groves & Sons Company v. Fulton County,* 920 F.2d 752, 754 (11th Cir. 1991). He stated in the affidavit that he is familiar both with the challenges of bringing a lawsuit to enjoin an MFBE program and the rates charged by attorneys in the metropolitan Atlanta area. In his opinion, $275.00 is a reasonable rate for Messrs. Barge and McKee in this case.

5. An affidavit by Mr. Roger K. Quillen, a partner with Mr. Bell in Fisher & Phillips, stating that he has practiced law in Georgia since 1980, spends the bulk of his practice defending companies and governments in constitutional and employment cases, has known Mr. Barge for more than ten years, knows the prices charged by attorneys in the Atlanta area for cases similar to the one brought here, and believes that $275.00 per hour is a reasonable rate for Messrs. Barge and McKee's services. (Plaintiff's Brief in Support of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. D.) [Doc. 191]

6. Testimony at the evidentiary hearing by Mr. William B. Hill, Jr., a litigation partner in the Atlanta office of the law firm Paul, Hastings, Janofsky & Walker. Mr. Hill stated that he graduated from Washington & Lee University Law School in 1977 and immediately thereafter became employed with the State of Georgia's Law Department. He eventually rose to the position of Deputy Attorney General, a position he held until he was appointed a Fulton County State Court Judge in October, 1990. He was appointed a Fulton County Superior Court Judge in April, 1992, and remained in that position until May, 1995,

when he resigned from the bench to join Paul, Hastings. Mr. Hill stated that he worked with Mr. McKee for ten years, knows the prices charged by attorneys in the Atlanta area for cases similar to the one brought here, and believes that $275.00 per hour is a reasonable rate for Messrs. Barge and McKee's services. Mr. Hill stated that he personally bills clients at $355.00–$380.00 per hour.

7. The attorneys' fee award in a recent case, *Rau v. Apple–Rio Management Co.,* No. 1:97–CV–2345–GGB (N.D.Ga. Mar. 29, 2000), where Magistrate Judge Brill compensated William B. Hill, Jr., at a rate of $275.00 per hour. The rate that Mr. Hill requested in that case was $350.00 per hour. (Plaintiff's Reply in Support of Plaintiff's Supplemental Motion for Award of Attorneys' Fees and Expenses of Litigation, Ex. A.) [Doc. 338]

Fulton County has responded to Plaintiff's affidavits with affidavits that support its contention that the appropriate rate for Messrs. Barge and McKee is $225.00 per hour. None of the affidavits that Fulton County provides were prepared for this case. Instead, these affidavits were part of the record in *Rau* and in *Nida v. BellSouth Telecomm., Inc.,* No. 1:97–CV–350–JEC. The affiants in those cases stated as follows:

1. E. Scott Smith, a partner in the Atlanta office of Ford & Harrison who has practiced in Georgia since 1980 and has handled "hundreds" of discrimination cases, typically charges $220.00 per hour. He stated that this rate is comparable to rates charged by other attorneys in the Atlanta market who practice employment law and who are of similar experience, education and expertise. (July 3, 2000, Evidentiary Hearing, Def.'s Ex. 5.)

2. Michael C. Towers, a partner at Fisher & Phillips, stated that he has

practiced in Georgia since 1970 and that his billing rates in 1998 and 1999 for all clients ranged from $210.00 to $240.00 per hour. He also stated that the senior litigation partners at his firm with 20 or more years experience typically charge $200.00 to $240.00 per hour for their legal services. (July 3, 2000, Evidentiary Hearing, Def.'s Ex. 6.)

3. Steven C. Ellington, a partner in the Atlanta construction and employment law firm Smith, Currie & Hancock, stated that he has been a member of the California Bar since 1986 and the Georgia Bar since 1991. He practices solely in the area of labor and employment law and typically charges clients $205.00 per hour. He further stated that the partner with the highest hourly rate in his firm charges $240.00 per hour. (July 3, 2000, Evidentiary Hearing, Def.'s Ex. 7.)

4. Paul Oliver, a principal in the Atlanta law firm of Wimberly, Lawson, Steckel, Nelson & Schneider, P.C., stated that he has practiced in Georgia since graduating from Harvard Law School in 1974 and charged his client $180.00 per hour in the *Rau* case. (July 3, 2000, Evidentiary Hearing, Def.'s Ex. 8.)

Both sides also have argued that application of the *Johnson* factors supports their assessment of the reasonable rate. In his own affidavit, Mr. Barge listed each of the *Johnson* factors and argued how each one supports a reasonable fee of $275.00 per hour for him. Conversely, Fulton County responded to Plaintiff's petition that an application of the *Johnson* factors does not warrant increasing Messrs. Barge and McKee's fee above $225.00 per hour. This Court deals with each factor, and the parties' arguments, accordingly.

1. *Time and Labor Involved.* Plaintiff states that this case involved a significant time commitment for more than 3 years and that document production alone required the full-time services of two associates for 6 months. Plaintiff, however, has failed to explain how this time and labor is not sufficiently reflected and compensated in the number of hours for which it requests fees. The Court has already taken this factor into account in calculating the reasonable hours expended in the case. For example, in compensating Plaintiff for 2,444.0 hours of document production and analysis, the Court emphasized the case's four-year existence and that its protracted nature was caused in large part by Fulton County's failure to cooperate. Since the time and labor involved is already reflected in the reasonable hours expended, this factor does not support an increase in Plaintiff's hourly rate although it suggests an hourly rate not at the bottom of the range.

2. *Novelty and Difficulty of the Questions.* Plaintiff states that this case presented novel and difficult legal issues of first impression in the State of Georgia. That may be true, but the legal issues presented were not novel ones of first impression in the Eleventh Circuit. Most of the legal issues in this case were resolved by the Eleventh Circuit in *Engineering Contractors Association v. Metropolitan Dade County*, 122 F.3d 895, 906–29 (11th Cir.1997). Pursuant to *Engineering Contractors*, Fulton County had a very heavy burden to justify its MFBE program. Although Plaintiff's counsel were required to persevere over the course of three years after *Engineering Contractors*, they had a better than even chance of winning if they were persistent. Persistence is reflected in the number of hours expended in this case and, although commendable, does not alone support an enhancement based upon novel or legally complex issues.

3. *Skill Requisite to Perform the Legal Service Properly.* Plaintiff states that only experienced counsel could have succeeded in this case because of the difficult legal issues involved and the voluminous

discovery. This Court, however, has already determined that the lodestar effect of voluminous discovery is reflected in the number of hours expended, and the legal issues in this case were not as novel as Plaintiff argues. As a result, application of this factor does not support Plaintiff receiving an increased rate. The Court does, however, recognize that Plaintiff's counsel are talented and experienced attorneys (as are defense counsel) who pursued this case with vigor and tenacity (as did defense counsel). This suggests an hourly rate not at the bottom of the range.

4. *Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.* Mr. Barge states that his acceptance of this case has prevented him from attracting African–American and other minority clients in large race discrimination cases. He states that he and his new law firm, Parks, Chesin & Miller, have a long history of representing minority clients and that such representation is now in jeopardy because of this case. Furthermore, Mr. Barge states that the time commitment of this case limited his acceptance of new cases. Mr. McKee states that he does not know of any actual or potential clients he has lost because of this case, but he has been precluded from doing work for some of his clients during the course of this lawsuit. The Court understands that the time commitments of this case possibly have affected Plaintiff's counsels' ability to accept new cases. The Court, however, cannot accept Mr. Barge's contention that he should be compensated at a higher rate on grounds that this case has affected his and his firm's ability to attract minority clients. This case has not affected Parks, Chesin & Miller's reputation any more than all the other high-profile discrimination cases representing white plaintiffs it has accepted over the last ten years, including the representation of (1) numerous white plaintiffs in discrimination suits against Fulton County and other metropolitan Atlanta counties, *e.g., Smith v. Lomax,* 45 F.3d 402, 403 (11th Cir.1995); (2) white plaintiffs who challenged the State of Georgia's 1991 Congressional and legislative reapportionment plans for maximizing black-majority districts, *Miller v. Johnson,* 515 U.S. 900, 902–03, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995); (3) white plaintiffs who are challenging the University of Georgia's admissions criteria as impermissibly race-based, *e.g., Johnson v. Board of Regents,* 106 F.Supp.2d 1362 (S.D.Ga. 2000); and (4) white plaintiffs who are challenging the City of Atlanta's affirmative action contracting program, *Lee Gen. Contractors v. City of Atlanta,* No. 1:99–CV–2194–WBH (N.D.Ga. filed Oct. 15, 1999). Accordingly, the Court cannot conclude that the preclusion of other employment is sufficient in this case to support an increased hourly rate.

5. *Customary Fee.* Plaintiff states that there is no customary fee for a case of this type, but then notes that other courts in the Eleventh Circuit have awarded hourly rates of $275.00 to $290.00 per hour in complex cases of government race and gender discrimination. *See, e.g., Mallory v. Harkness,* 923 F.Supp. 1546, 1555 (S.D.Fla.1996) (awarding $275.00 per hour); *Dillard v. City of Elba,* 863 F.Supp. 1550, 1554 (M.D.Ala.1993) (awarding $290.00 per hour); *Knight v. Alabama,* 824 F.Supp. 1022, 1032 (N.D.Ala.1993) (awarding $275.00 per hour). As for their own customary fee, Mr. Barge has stated that his customary fee in non-contingent cases was $225.00 per hour until April, 2000, and is now $250.00 to $275.00 per hour, and Mr. McKee has stated that his non-contingent fee is $150.00 to $250.00 per hour. At the evidentiary hearing, Fulton County's outside counsel indicated that they were paid $200.00 an hour for non-trial work and $225.00 an hour during trial. This factor suggests a fee in the range of $225.00 to $275.00 an hour.

6. *Whether the Fee is Fixed or Contingent.* Mr. Barge stated in the affidavit he filed after the bench trial, "Obviously, the fee was contingent, thus making counsel's regular rate for *hourly* work inadequate as

the lodestar rate." (Plaintiff's Brief in Support of Specification and Itemization Of Attorney's Fees and Non–Taxable Costs, Ex. E.) [Doc. 191]. The Court, notes, however, that Plaintiff recovered only $8,750 at the jury trial. In light of this, the Court questions whether Mr. Barge would still consider his hourly rate in this case as an inadequate benchmark. In any event, the Court does not believe that the contingent fee arrangement in this case warrants a higher reasonable hourly rate. Nor does the Court believe that Plaintiff's limited monetary relief at the bench trial supports a lower reasonable hourly rate. This case was not as much about recovering financial damages as it was about forcing Fulton County to dismantle an unconstitutional program. Accordingly, the contingent fee arrangement of this case does not affect in either direction this Court's analysis of the reasonable hourly rate.

7. *Time Limitations Imposed by the Client or the Circumstances.* Mr. Barge stated in his original affidavit: "This case created a difficult time situation in the period November, 1997, through June, 1998, due to the extraordinary effort required to analyze documentary and expert evidence. Not only did this schedule limit other employment, it precluded family time, and any semblance of professional or personal normalcy for the duration of the case. A similar situation occurred during trial, when I sometimes went home only to eat and sleep, including weekends." The Fifth Circuit in *Johnson* stated, "Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir.1974). Plaintiff has provided no evidence that the work it completed in this case can be termed "priority work," as might arise in an emergency situation, or that Messrs. Barge or McKee were brought in at a late stage in

the proceedings, as they were not. Unfortunately, it is the nature of the profession that practicing law is often time-consuming. Its time-consuming nature is already reflected in the number of hours reasonably expended. Accordingly, the time limitations of this case do not support an increased hourly rate. They do suggest using a rate not at the bottom of the range.

8. *Amount Involved and Results Obtained.* Plaintiff contends that the results obtained were "extraordinary." Apart from the small damage award, the result obtained in this case was the dismantling of Fulton County's 1994 MFBE program and any renewal of the 1994 program. From a public policy standpoint, this was an important and significant result. Nevertheless, the Court cannot find that the results obtained were so extraordinary as to support an increase in counsels' reasonable hourly rate above the rate they typically charge. This factor does suggest setting a rate not at the bottom of the range.

9. *Experience, Reputation and Ability of the Attorneys.* As discussed above, Plaintiff has provided the Court with numerous affidavits of attorneys in the metropolitan Atlanta area who state that a $275.00 hourly rate is reasonable for attorneys of comparable skill, experience and reputation as Messrs. Barge and McKee. Fulton County, in contrast, has provided the Court with affidavits of attorneys who state that a lower rate of $180.00 to $240.00 per hour is reasonable. In light of these affidavits, the Court concludes that while $275.00 per hour is not necessarily an unreasonable rate, there is also evidence that would support an award of $225.00 per hour, as Fulton County contends is proper here. Again, this factor suggests a range of $225.00 to $275.00 an hour.

10. *"Undesirability" of the Case.* Mr. Barge has stated that this case has generated hostility towards him and that, there-

fore, his hourly rate should reflect the undesirability of this case. The Court cannot agree. Mr. Barge cannot claim that reverse discrimination cases are undesirable to him when his firm indeed specializes in them and has attracted new clients based on his success in this case. *See Johnson v. University College,* 706 F.2d 1205, 1210 (11th Cir.1983) (stating that district court did not err in concluding that significant civil rights litigation is not undesirable to attorneys whose practice heavily consists of plaintiffs' civil rights work and where success could very well generate other representations in similar cases).

11. *Nature and Length of the Professional Relationship with the Client.* It is true that Plaintiff in this case is not likely to be an ongoing client of Messrs. Barge or McKee. Plaintiff hired Messrs. Barge and McKee not as its general counsel for ongoing matters but rather to assist it in remedying a discrete form of discrimination it was suffering at the hands of Fulton County. Nevertheless, this fact alone does not warrant an increased rate for Messrs. Barge or McKee. This one-time representation presumably will be reflected in any hourly fee award between $225.00 and $275.00 that Messrs. Barge and McKee receive. Mr. McKee admitted in his affidavit that he charges $150.00 to $250.00 per hour for "those clients that I do not serve as general counsel (for whom I give discounted rates)." (Plaintiff's Brief in Supp. of Specification and Itemization of Attorney's Fees and Non–Taxable Costs, Ex. F.) [Doc. 191]

12. *Awards in Similar Case.* The circumstances surrounding this factor have been well-discussed in the above factors. There is evidence in similar cases that would support an award between $180.00 and $290.00 per hour. Thus, those cases do no more than support any award that is within the range of both parties' reasonable rate—$225.00 to $275.00 per hour for Messrs. Barge and McKee's services.

In light of the evidence presented in this case, the Court concludes that the range for a reasonable hourly rate for Messrs. Barge and McKee's services in this case is $225.00 to $275.00. The Court exercises its discretion to compensate Plaintiff for Messrs. Barge and McKee's services exactly in the middle of this range at $250.00 per hour. This conclusion is based on Messrs. Barge and McKee customary rates, the affidavits presented in this case as to the reasonable hourly rate in the metropolitan Atlanta area for attorneys of comparable skill, reputation and experience as Messrs. Barge and McKee, and the Court's application of the *Johnson* factors. Accordingly, the number of hours expended by Messrs. Barge and McKee in this case is multiplied by $250.00 per hour to determine the compensation for their services in this case.

The Court turns now to the reasonable hourly rate of the associate attorneys in this case. Plaintiff contends that the reasonable hourly rate for Ms. Susan Rickersen's legal services in this case is $150.00 and that the reasonable hourly rate is $125.00 for work completed by Ms. Deborah Barrow and Holli Hidden. Fulton County originally did not challenge the associate rates but finally did so at the evidentiary hearing once it heard Plaintiff provide an explanation of the qualifications of its associates and how it compensates them. Fulton County now argues that a lower rate of $100.00 for Ms. Rickertsen and $75.00 for Ms. Barrow and Ms. Hidden is more appropriate. The Court agrees with Plaintiff that it is irrelevant how Messrs. Barge and McKee actually compensated their associates. The proper test for an award of attorneys' fees is not cost to Messrs. Barge and McKee for associate compensation, but rather the associates' prevailing market rates. *See Blum v. Stenson,* 465 U.S. 886, 892, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (rejecting contention that fee awards should be calculated "according to the cost of providing legal ser-

vices rather than according to the prevailing market rate").

The Court, however, does not agree with Plaintiff that the associates' time in this case should be compensated at $150.00 and $125.00 per hour respectively. While Plaintiff has filed several affidavits that $125.00 per hour is reasonable for a junior associate attorney and $150.00 per hour is reasonable for a mid-level associate attorney, the Court should not blindly accept the hourly rate of an advocate and ignore its own personal expertise and experience, as the Eleventh Circuit instructed in *Duckworth v. Whisenant,* 97 F.3d 1393, 1396–97 (11th Cir.1996). Furthermore, in *Rau,* for example, Judge Brill recently compensated an attorney who would be a fourth-year associate, if she were still at the firm, $125.00 per hour, as opposed to the requested $170.00 per hour. *Rau v. Apple–Rio Management Co.,* No. 1:97–CV–2345–GGB, at 4, 10 (N.D.Ga. Mar. 29, 2000). It is this Court's conclusion, based on both the evidence presented in this case of prevailing market rates and the Court's analysis of the *Johnson* factors—which apply to associate rates as much as Messrs. Barge and McKee's rates—that a reasonable range for Ms. Rickertsen in this case is $100.00 to $150.00 per hour, and a reasonable range for Ms. Barrow and Ms. Hidden is $75.00 to $125.00 per hour. Again, the Court will base the fee award on a rate set in the middle of the range, at a $125.00 hourly rate for Ms. Rickertsen and a $100.00 hourly rate for Ms. Barrow and Ms. Hidden.

As discussed above in the reasonable hours calculation, Fulton County challenged all hours attributed to Mr. Daniel McKee on grounds that he is not a trained paralegal, but rather an office manager whose activities are already reflected in the attorneys' hourly rates. The Court disagreed and held that all time in the case that involved paralegal work by Daniel McKee should be compensated. Fulton County has not challenged the $50.00 hourly rate Plaintiff requests for Daniel McKee's paralegal duties. Accordingly, the time expended by Daniel McKee in this case on paralegal duties is compensated at $50.00 per hour.

## 2. ADJUSTMENT TO THE "LODESTAR"

Once the lodestar is obtained, the Court may then adjust it upwards or downwards. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999); *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988). The Supreme Court and Eleventh Circuit have stated that while the adjustment may be based on a number of factors, the most important factor is the results obtained. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Norman,* 836 F.2d at 1302. The Supreme Court has warned, however, that upward adjustments are rarely warranted because the factors on which a prevailing party typically seeks an enhancement already have been considered by the Court in determining the reasonable hourly rate:

> Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.

*Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Thus, for the Court to provide an enhancement based on the *Johnson* factors would result in "double-dipping."

██ Plaintiff contends that it is entitled to an enhancement because the case

has taken four years, Plaintiff prevailed against "a much larger and better-funded opponent," and the results obtained were exceptional results that benefit public policy. As to the first argument, the time expended in this case during the last four years is already reflected in the lodestar calculation and, therefore, cannot support an enhancement. As to the second argument for an enhancement, there is nothing in the precedent of the Supreme Court or the Eleventh Circuit that allows enhancements *per se* where a litigant has succeeded against a larger and better-funded opponent. Plaintiff's third argument why it should receive an upward adjustment to the lodestar, however, requires somewhat more detailed discussion by the Court. As the Eleventh Circuit noted in *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir.197), the public benefit of a plaintiff's civil rights recovery generally does not assume a principal significance in the court's determination of the results obtained, but it may do so if the recovery "engenders specific spillover benefits for non-parties." *Id.* Here, Plaintiff did not seek relief for a relatively isolated constitutional violation that Fulton County committed only against it. Instead, Plaintiff sought to dismantle an unconstitutional affirmative action plan that steered lucrative county contracts to minorities and women and to the disadvantage of others who sought to conduct business with Fulton County. Although it is true that the Court refused to certify this case as a class action, that fact in no way negates the importance of the case from a public policy standpoint.

Nevertheless, the Court must deny Plaintiff's request for an upward adjustment. Both the Supreme Court and the Eleventh Circuit have held that "the fact that the results obtained would be of far-reaching significance to a large number of people usually is not grounds for enhancement, because the results obtained, as one of the *Johnson* factors, normally will be subsumed in the calculation of a reasonable fee and, therefore, usually should not provide an independent basis for increasing the fee award." *Blum v. Stenson,* 465 U.S. 886, 900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *accord NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir. 1987). "Exceptional results are results that are out of the ordinary, unusual, or rare. Ordinarily, results are not exceptional merely because of the nature of the right vindicated or the amount recovered." *Norman v. Housing Auth. of the City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988). In this case, there exist two reasons not to enhance Plaintiff's attorneys' fee award on grounds that it obtained exceptional results. First, as Judge Murphy has explained, "an outcome which is expected in the context of extant substantive law will not ordinarily qualify as outstanding." *Carey v. Rudeseal,* 721 F.Supp. 294, 300 (N.D.Ga.1989). Fulton County's MFBE Program was clearly illegal in light of the Eleventh Circuit's decision in *Engineering Contractors Association v. Metropolitan Dade County,* 122 F.3d 895, 906–29 (11th Cir.1997). No new substantive law was created in this case. The Court ruled for Plaintiff at the injunctive and declaratory relief stage based on the already existing law of *Engineering Contractors.* The Court's decision did not break new ground. It simply stands on the solid ground of Supreme Court and Eleventh Circuit precedent. Second, Plaintiff's persistence is already reflected in the lodestar calculation by the number of hours expended in this case. In short, there are no specific grounds to support an upward adjustment to the already large award suggested by the lodestar. *See Norman v. Housing Auth. of the City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988) ("Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed."). There is no indication that the success of Plaintiff's attorneys

was achieved with any special economies of time or despite unusually difficult circumstances that are not already reflected in the lodestar calculation. Accordingly, the Court must deny Plaintiff's request to enhance the lodestar amount.

Fulton County contends that it is entitled to a downward adjustment in Plaintiff's fee award on grounds that Plaintiff received only a fraction of the monetary relief that it requested. The Court disagrees. First, while it is true that Plaintiff did not receive punitive damages, Plaintiff obtained more than nominal compensatory damages. Second, Plaintiff's counsel should not be penalized for representing a small-business that suffered only a few thousand dollars in damages rather than a large corporation that was impermissibly precluded from winning a multi-million dollar county contract. Bidders on large contracts are unlikely to challenge the political establishment by pursuing a case such as this. Third, even if the damages award somehow could be considered "nominal," not all nominal damage awards produce purely pyrrhic victories. *Farrar v. Hobby*, 506 U.S. 103, 120–21, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring). Plaintiff here was "vindicat[ing] important civil and constitutional right that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *see also Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir.1988) ("The vindication of a constitutional right is important even if only a small amount of money is involved."). Plaintiff's lawsuit led to the dismantling of an unconstitutional affirmative action contracting program in the largest county in Georgia. Accordingly, Fulton County's request for a reduction in the lodestar must be denied.

### C. TAXABLE COSTS

Plaintiff has filed with the Court Bills of Costs [Docs. 185 & 309] in accordance with 28 U.S.C. §§ 1821 and 1920, Fed.R.Civ.P. 54(c), and Local Rule 54.1. The Supreme Court has stated that the word "costs" is a term of art defined by 28 U.S.C. § 1920. *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). Section 1920 provides that only the following items may be taxed as "costs":

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Although the Court possesses broad discretion whether to award costs, it cannot award as costs any items not set out in Section 1920. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir.1996); *Mallory v. Harkness*, 923 F.Supp. 1546, 1557 (S.D.Fla.1996); *Jane L. v. Bangerter*, 828 F.Supp. 1544, 1557 (D.Utah 1993).

In this case, on July 9, 1999, Plaintiff filed its first Bill of Costs [Doc. 185] totaling $12,369.86. The Clerk of Court taxed those costs against Fulton County on July 13, 1999. Following the jury trial on damages, on March 2, 2000, Plaintiff filed a second Bill of Costs [Doc. 309] totaling $4,399.83. The next day, the Clerk taxed those costs to Fulton County. The Plaintiff has agreed to remove $772.05 from the Bills of Costs and instead include that amount with Plaintiff's request for non-taxable expenses. Otherwise, Fulton County has not challenged Plaintiff's Bills of Costs. Accordingly, the costs taxed by

the Clerk in this case are upheld, as modified, in the amount of $15,997.64.

### D. NON–TAXABLE EXPENSES

Plaintiff also requests that it be reimbursed for $62,826.60 in non-taxable expenses that it incurred in this case. According to Plaintiff, it incurred the following non-taxable expenses: (1) $52,330.19 up to and including the bench trial, (2) $5,325.64 after the bench trial and up through the jury trial, (3) $4,398.72 since Plaintiff filed its Supplemental Petition for Attorneys' Fees [Doc. 312], and (4) $772.05 that the parties have agreed to remove from the taxable Bill of Costs [Doc. 309] submitted March 2, 2000, and include instead with Plaintiff's request for non-taxable expenses.

"With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 438 (11th Cir.1999) (quoting *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983)); *see Mallory,* 923 F.Supp. at 1557 ("[B]ecause the Plaintiff has sought attorney's fees under 42 U.S.C. § 1988, the traditional limits of 28 U.S.C. § 1920 do not restrict the recovery of costs."). Pursuant to § 1988, a plaintiff may recover all out-of-pocket expenses that "would normally be charged to a fee paying client" and are not "routinely absorbed in office overhead." *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir.1994); *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1023 (N.D.Ohio 1997); *Jane L. v. Bangerter,* 828 F.Supp. 1544, 1558 (D.Utah 1993); *Cherry v. Rockdale County,* 601 F.Supp. 78, 81 (N.D.Ga. 1984). Importantly, the Eleventh Circuit has directed that "the standard of reasonableness is to be given a liberal interpretation." *Dowdell,* 698 F.2d at 1192; *accord NAACP v. City of Evergreen,* 812 F.2d

1332, 1337 (11th Cir.1987). In applying this standard, the Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research. *Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994) ("The [district] court denied telephone and travel expenses on the ground that 28 U.S.C. § 1920 does not provide for their recovery. The government acknowledges that this was error ..."), *Dowdell,* 698 F.2d at 1192; *Mallory v. Harkness,* 923 F.Supp. 1546, 1557 (S.D.Fla.1996); *Cherry,* 601 F.Supp. at 81. The policy underlying this broad recovery of expenses has been stated by the Eleventh Circuit as follows:

> "Reasonable attorneys' fees under the Act must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly."

*Dowdell,* 698 F.2d at 1190.

Fulton County challenges only one item that Plaintiff has listed as a non-taxable expense: Plaintiff's expert fees. Fulton County contends that expert fees are not recoverable in a Section 1983 case. The Supreme Court in *Crawford Fitting Company v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), held that expert fees cannot be awarded to a prevailing plaintiff absent explicit Congressional authority because the general costs statutes, 28 U.S.C. §§ 1821 and 1920, do not allow party experts' costs to be taxed to the losing party. *Crawford Fitting,* 482 U.S. at 445, 107

S.Ct. 2494. Following the precedent of *Crawford Fitting,* the Supreme Court four years later specifically held that expert witness fees cannot be awarded to prevailing parties in a Section 1983 action because Section 1988, which governs attorneys' fees in Section 1983 actions, does not explicitly allow recovery of expert fees in Section 1983 cases. *West Virginia Univ. Hosp. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). The Supreme Court emphasized that, in contrast to Section 1988, at least 34 other statutes in effect at the time of the *Casey* decision, including the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), do explicitly allow recovery of expert fees. *Id.* at 89, 111 S.Ct. 1138. Thus, where Congress desires that expert fees be compensated, it has specifically provided so. *Id.* at 88–92, 111 S.Ct. 1138.

A few months after the *Casey* decision, Congress amended Section 1988 to allow expert fees in certain cases. The amended text of Section 1988(c) states:

> (c) Expert Fees. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

42 U.S.C. § 1988(c). Section 1988(c), therefore, by its terms allows expert fees for prevailing parties in Section 1981 or 1981a cases. It, however, does not specify recovery of expert fees in Section 1983 cases.

Since the Supreme Court's 1991 decision in *Casey* and the amendment to Section 1988 explicitly allowing expert fees in only Section 1981 and 1981a cases, federal courts consistently have held that prevailing parties in Section 1983 cases cannot recover expert witness fees. *Davis v. Mason County,* 927 F.2d 1473, 1487 (9th Cir. 1991); *Petties v. District of Columbia,* 55 F.Supp.2d 17, 18 (D.D.C.1999); *Swans v. City of Lansing,* 65 F.Supp.2d 625, 648 (W.D.Mich.1998); *Brennan v. Springfield*

*Township,* 1998 WL 792180, at *5 & n. 12 (E.D.Pa.1998); *McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.,* 976 F.Supp. 53, 69 (D.Mass.1997); *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1024–25 & n. 10 (N.D.Ohio 1997); *Johnson v. Mortham,* 950 F.Supp. 1117, 1127 (N.D.Fla.1996); *Baird v. Consolidated City of Indianapolis,* 830 F.Supp. 1183, 1188 (S.D.Ind.1993); *United States v. City of Buffalo,* 770 F.Supp. 108, 117 (W.D.N.Y.1991); *Rivera v. Dyett,* 762 F.Supp. 1109, 1118 (S.D.N.Y.1991); *Hayes v. City of Seattle,* 131 Wash.2d 706, 934 P.2d 1179, 1185 (1997), *opinion corrected,* 943 P.2d 265, 265. Fulton County contends that the Court should adhere to this precedent and conclude that Plaintiff cannot recover expert witness fees because those fees are not compensable in Section 1983 actions.

Based on the plain language of the statute and the holdings of numerous other courts on this issue, the Court agrees with Fulton County's analysis of the law that the Civil Rights Act of 1991 amended Section 1988 to provide for expert witness fees only in actions or proceedings to enforce a provision of Section 1981 or 1981a. For the other civil rights statutes to which Section 1988 applies, including Section 1983, *Casey*'s holding remains intact to prohibit recovery of expert fees. This conclusion unfortunately may hinder the policies underlying the award of attorneys' fees in Section 1983 cases, which the Eleventh Circuit stated so clearly in *Dowdell v. City of Apopka,* 698 F.2d 1181, 1190 (11th Cir.1983), as quoted above. It is, however, Congress' role to change this law. *Casey,* 499 U.S. at 99, 111 S.Ct. 1138. This Court's duty is to follow the law as enacted by Congress and interpreted by the Supreme Court and Eleventh Circuit.

█ The Court, however, does not agree with Fulton County that expert fees are not recoverable in this case. Fulton County views this case as simply a Section 1983 case. The Court, however, believes it should treat the case as a Section 1981

action for the purpose of expert fees. The Court stated in its February 12, 1999, Summary Judgment Order:

> Section 1981 covers claims for intentional racial discrimination in "the making, performance, modification and termination of [employment] contracts" and in "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. Success on a Section 1981 claim requires proof of intentional discrimination. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 949 (11th Cir. 1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992). The Defendants contend that the Plaintiffs' Section 1981 claims are foreclosed because Section 1983 claims for damages constitute the exclusive federal remedy for violation of the rights guaranteed in a Section 1981 action. In *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989), the Supreme Court held that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor." *Id.* at 733, 109 S.Ct. at 2722. Notwithstanding this controlling authority, the Plaintiffs respond that the 1991 amendments to the Civil Rights Act, specifically the amendment adding subsection (c) to Section 1981, overruled *Jett* to create an express cause of action for violations of Section 1981 by state actors. Subsection (c) to Section 1981 provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law." Pub.L. 102–166, Title I, § 101 (1991), 105 Stat. 1071, as amended, 42 U.S.C. § 1981(c).

> The Eleventh Circuit has yet to consider whether Section 1981(c) overruled *Jett.* The district courts have split as to whether *Jett* was overruled. *Cf. Johnson v. City of Fort Lauderdale,* 903 F.Supp. 1520 (S.D.Fla.1995), *aff'd,* 148 F.3d 1228 (11th Cir.1998), *with La Compania Ocho, Inc. v. United States Forest Service,* 874 F.Supp. 1242 (D.N.M.1995). This Court agrees with the well-reasoned *Johnson* case which concluded that subsection (c) is consistent with *Jett* and does not create an express cause of action under Section 1981. *Johnson,* 903 F.Supp. at 1522–23. Thus, the only means for the Plaintiffs to seek redress for rights protected by Section 1981 is through a Section 1983 action. In all of the Plaintiffs' counts asserting Section 1981 violations, they have sought relief as enforced by Section 1983. Accordingly, while the Defendants are technically correct with their argument, the Court will not dismiss any of the Plaintiffs' constitutional claims.

*Webster,* 44 F.Supp.2d at 1381. The Court thus concluded that Section 1983 is the exclusive federal remedy for bringing Section 1981 claims against governments. Since then, the Eleventh Circuit has addressed the issue and concluded also that the 1991 amendments to the Civil Rights Act "did not change § 1981 and § 1983 contains the sole cause of action against state actors for violations of § 1981." *Butts v. County of Volusia,* 222 F.3d 891, 893 (11th Cir.2000). Section 1983, therefore, is the sole jurisdictional vehicle for bringing Section 1981 claims against governments. This simply means that a plaintiff asserting Section 1981 violations against a government must bring them pursuant to Section 1983. It does not mean that governments are free from liability for constitutional violations of the type protected by Section 1981. *See id.,* at 893 n. 1 ("Appellant could have sued under § 1983 for the alleged violation of § 1981, but he chose not to do so.").

Unfortunately, the conclusion that Section 1983 is the sole cause of action against state actors for Section 1981 violations might lead to anomalous results in the award of expert fees. If this Court treats this case as a Section 1983 action alone for the purpose of awarding expert fees, then

no prevailing party could ever recover expert fees from a government for Section 1981 violations. Such a result would be perverse, especially in light of the vital necessity of expert testimony in factually complex race- and gender-based government contracting cases such as this one. *See, e.g., Engineering Contractors Assoc. v. Metropolitan Dade County,* 122 F.3d 895, 912–24 (11th Cir.1997) (discussing complex statistical evidence and its decisional importance); *Webster,* 51 F.Supp.2d at 1367–79. Section 1983 may be the jurisdictional vehicle in this case, but the underlying cause of action stems from Section 1981. Because the underlying cause of action stems from Section 1981 and the Eleventh Circuit policy underlying recovery of attorneys' fees is to reimburse *"all* reasonable expenses incurred in case preparation," *NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987) (emphasis added), a plaintiff should not be denied reasonable expert fees in a case brought to remedy constitutional violations of the type protected by Section 1981.

For this Court to rule otherwise would elevate form over substance. Indeed, this seems especially so when one considers the reasoning of the Supreme Court's plurality opinion in *Jett.* It appears that the principal reason the four-member plurality concluded that Section 1981 does not provide a cause of action against state actors is because Section 1983 already provides the statutory support to sue them. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 731–32, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (O'Connor, J., plurality opinion) ("In the context of § 1981 and § 1982 to private actors, we 'had little choice but to hold that aggrieved individuals could enforce this prohibition, *for there existed no other remedy to address such violations of the statute.'* That is manifestly not the case here, and whatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a

particular statute." (Emphasis in original.) (Citations omitted.)). Thus, it is only because Section 1983 already provides a federal remedy that the *Jett* plurality said Section 1981 does not do so in cases against state actors. The Court believes that it would be ignoring the underlying substance of Plaintiff's claims if it concluded that expert fees cannot be awarded in this case. The underlying cause of action stems from a Section 1981 violation, and the Eleventh Circuit has adopted a broad, remedial policy in awarding attorneys' fees. *See Williams v. City of Fairburn,* 702 F.2d 973, 976 (11th Cir.1983) (stating that attorneys' fees statute is to be interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1190 (11th Cir.1983) (stating policy reasons why all reasonable expenses incurred should be recoverable). Consequently, the Court concludes that Plaintiff may recover the $29,082.50 in expert fees that it incurred for Dr. George Easton's services.

 Plaintiff, however, may not recover expert fees for its other expert, Ms. Sharon Kelly. Ms. Kelly did not testify at trial and consequently provided no assistance to the Court in rendering its decision. *See McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.,* 976 F.Supp. 53, 69 (D.Mass.1997) (disallowing expert fees where expert did not testify); *Mendoza v. City of Rome,* 162 F.R.D. 260, 264 (N.D.N.Y.1995) (disallowing expert fees where expert did not testify and no evidence showed expert's assistance with trial preparation); *McCullough v. Cady,* 640 F.Supp. 1012, 1026 (E.D.Mich.1986) (disallowing expert fees where expert did not testify). Even before the *Crawford Fitting* and *Casey* decisions, courts that reimbursed expert fees did not do so unless the experts testimony was reasonable, necessary, and of assistance to the Court in determining the issues of the case. *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled by International Wood-*

*workers of Am.,* 790 F.2d 1174, 1180 (5th Cir.1986). The Court cannot say that Ms. Kelly's services meet these criteria. Accordingly, the cost to Plaintiff of Ms. Kelly's services are excluded from their fee award. Plaintiff's non-taxable expenses are compensable in the amount of $59,-540.45, the amount Plaintiff has requested minus the $3,286.15 in expenses that it incurred for Ms. Kelly's services.

### E. CALCULATION OF ATTORNEYS' FEES AND COSTS AWARDED

The Eleventh Circuit has stated that a court granting an award of attorneys' fees should provide a summary table explaining how it arrived at the calculation of the attorneys' fees and costs awarded. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.2000) ("The trial court should articulate and give principled reasons for its decisions and show some calculations."); *ACLU of Ga. v. Barnes,* 168 F.3d 423, 439 (11th Cir.1999) ("To the extent that the excessive amount was the result of an arithmetical error, it illustrates why district courts should, show their calculations in fee orders."); *cf. Duckworth v. Whisenant,* 97 F.3d 1393, 1400 (providing summary calculation of attorneys' fees and costs awarded). Accordingly, the Court provides the following summary calculation of the fee award in this case:

| | | | | |
|---|---|---|---|---|
| *Complaints and Mandatory Disclosures (57.4 hours)* | | | | $13,197.50 |
| Mason Barge | 19.7 hours | x | $250/hour | |
| Patrick McKee | 29.8 hours | x | $250/hour | |
| Deborah Barrow | 2.5 hours | x | $100/hour | |
| Holli Hidden | 4.1 hours | x | $100/hour | |
| Susan Rickertsen | 1.3 hours | x | $125/hour | |
| | | | | |
| *Class Certification* (0 hours) | | | | 0.00 |
| | | | | |
| *Depositions and Witnesses* (407.2 hours) | | | | 88,520.00 |
| Mason Barge | 80.1 hours | x | $250/hour | |
| Patrick McKee | 239.3 hours | x | $250/hour | |
| Deborah Barrow | 57.5 hours | x | $100/hour | |
| Holli Hidden | 28.1 hours | x | $100/hour | |
| Dan McKee | 2.2 hours | x | $50/hour | |
| | | | | |
| *Document Production and Analysis* (2,444.0 hours) | | | | 287,657.50 |
| Mason Barge | 205.6 hours | x | $250/hour | |
| Patrick McKee | 88.7 hours | x | $250/hour | |
| Deborah Barrow | 769.4 hours | x | $100/hour | |
| Holli Hidden | 1,240.6 hours | x | $100/hour | |
| Susan Rickertsen | 81.3 hours | x | $125/hour | |
| Dan McKee | 58.4 hours | x | $50/hour | |
| | | | | |
| *Written Discovery* (235.7 hours) | | | | 44,095.00 |
| Mason Barge | 32.2 hours | x | $250/hour | |
| Patrick McKee | 100.4 hours | x | $250/hour | |
| Deborah Barrow | 73.9 hours | x | $100/hour | |
| Holli Hidden | 3.8 hours | x | $100/hour | |
| Susan Rickertsen | 25.4 hours | x | $125/hour | |
| | | | | |
| *Other Investigation and Background Research* (128.8 hours) | | | | 25,697.50 |
| Mason Barge | 46.9 hours | x | $250/hour | |
| Patrick McKee | 38.8 hours | x | $250/hour | |
| Deborah Barrow | 24.8 hours | x | $100/hour | |
| Holli Hidden | 10.8 hours | x | $100/hour | |
| Susan Rickertsen | 4.5 hours | x | $125/hour | |
| Dan McKee | 3.0 hours | x | $50/hour | |
| | | | | |
| *Expert Reports* (190.0 hours) | | | | 47,215.00 |
| Mason Barge | 140.6 hours | x | $250/hour | |
| Patrick McKee | 47.5 hours | x | $250/hour | |
| Deborah Barrow | 1.9 hours | x | $100/hour | |

| | | | | |
|---|---|---|---|---|
| *Discovery Motions* (123.5 hours) | | | | 29,945.00 |
| Mason Barge | 65.8 hours | x | $250/hour | |
| Patrick McKee | 51.5 hours | x | $250/hour | |
| Holli Hidden | 6.2 hours | x | $100/hour | |
| | | | | |
| *Motions for Summary Judgment* (328.4 hours) | | | | 79,025.00 |
| Mason Barge | 167.0 hours | x | $250/hour | |
| Patrick McKee | 140.9 hours | x | $250/hour | |
| Deborah Barrow | 20.5 hours | x | $100/hour | |
| | | | | |
| *Other Pre–Trial Motions* (326.2 hours) | | | | 81,550.00 |
| Mason Barge | 132.9 hours | x | $250/hour | |
| Patrick McKee | 193.3 hours | x | $250/hour | |
| | | | | |
| *Bench and Jury Trials* (1,178.5 hours) | | | | 267,765.00 |
| Mason Barge | 316.2 hours | x | $250/hour | |
| Patrick McKee | 728.0 hours | x | $250/hour | |
| Dan McKee | 134.3 hours | x | $50/hour | |
| | | | | |
| *Miscellaneous Correspondence and Conferences* (155.8 hours) | | | | 36,590.00 |
| Mason Barge | 71.0 hours | x | $250/hour | |
| Patrick McKee | 69.0 hours | x | $250/hour | |
| Holli Hidden | 9.9 hours | x | $100/hour | |
| Susan Rickertsen | 0.4 hours | x | $125/hour | |
| | | | | |
| *Reductions for Other Miscellaneous Matters* (−39.0 hours) | | | | −9,525.00 |
| Patrick McKee | −37.5 hours | x | $250/hour | |
| Holli Hidden | −1.5 hours | x | $100/hour | |
| | | | | |
| *Preparation and Litigation of Attorneys' Fees Request* (156.0 hours) | | | | 38,337.50 |
| Mason Barge | 113.2 hours | x | $250/hour | |
| Patrick McKee | 37.5 hours | x | $250/hour | |
| Susan Rickertsen | 5.3 hours | x | $125/hour | |
| | | | | |
| *Non–Taxable Expenses* | | | | 59,540.45 |
| | | | | |
| TOTAL ATTORNEYS' FEES AWARDED | | | | $1,089,610.45 |

## IV. CONCLUSION

As noted above, this has been a lengthy and protracted case. The Court's docket for this case now contains 348 entries. Each of those entries represents a pleading, a motion, a brief, a conference with the Court, a hearing, an order, or a day of trial. The fee award is necessarily a large one. It reflects Fulton County's determination to defend at whatever cost an MFBE program that was legally indefensible. For the reasons set forth above, Plaintiff's Motion for Attorneys' Fees or, in the Alternative, Plaintiff's Motion for Interim Award of Attorneys' Fees [Docs. 182 & 191] and Plaintiff's Supplemental Motion for Attorneys' Fees [Doc. 312] are GRANTED, as modified by the Court. Pursuant to 42 U.S.C. § 1988, the Plaintiff is awarded attorney's fees in the amount of $1,089,610.45. The Clerk is directed to enter a supplemental judgment in favor of Plaintiff and against the Defendant Fulton County in this amount and for post judgment interest at the legal rate from February 24, 2000 (the original judgment date). *See Georgia Assoc. of Retarded Citizens v. McDaniel,* 855 F.2d 794, 799 (11th Cir. 1988). The Clerk is directed to tax costs in favor of the Plaintiff and against Fulton County in the amount of $15,997.64.